# NELLIE DeMOSS v. KANSAS CITY RAILWAYS COMPANY, Appellant.

### In Banc, December 30, 1922.

1. **NEGLIGENCE: Automobile: Collision with Street Car: Independent Cause: Skidding.** Where it clearly appears from all the evidence that an independent, intervening and efficient cause, over which the defendant street railway company had no control and which its motorman had no reason to anticipate, namely, the skidding of the automobile as it crashed into the street car which was rounding a curve on a wet and slippery street, was the proximate cause of the accident, without the intervention of which the collision would not have occurred, plaintiff, who was riding in the automobile, cannot recover damages from the railway company for her consequent personal injuries.

2. ————: ————: ————: **Failure to Sound Gong and Look for Travelers: Independent Cause.** A street car, coming from the south, stopped on the south side of a cross street to discharge and receive passengers. Then the motorman, without sounding the gong and without looking westward for an oncoming automobile in which plaintiff was riding, but looking backward towards the place where passengers were being received, turned quickly westward around the curve into the intersecting street, and just then the automobile crashed into the side of the car. It was broad day, and the street was wet and slippery from rain. The automobile, driven by plaintiff's husband, its owner, at a speed of from eight to ten miles an hour, was equipped with chains, but they were not on the wheels. Plaintiff saw the street car when it was seventy-five feet away, saw it suddenly start forward when the automobile was thirty-five or forty feet away, immediately cried out to her husband, who applied the brakes to the automobile, and continued to look at the street car until the automobile crashed into it. She testified that if the automobile had not skidded it would have stopped. *Held,* that, assuming that the motorman was negligent in not sounding the gong and in not looking westward before starting the street car, his negligence was not the proximate cause of plaintiff's injuries, but the accident was the result of an independent, intervening and efficient cause, which the motorman had no reason to anticipate, namely, the skidding of the automobile on the wet and slippery street, the general rule being that, although a defendant may be negligent in the performance of some duty owed to the

person injured, no liability attaches unless such negligent act was the proximate cause of the injury.

*Held*, by WALKER, J., dissenting, with whom WOODSON, C. J., concurs, that there being no issue of contributory negligence, and there being a total failure of evidence to show that the accident was the result of negligence on the part of the driver of the automobile, the conclusion that must flow from all the facts is that the motorman was guilty of negligence, for otherwise the accident would not have happened. And as the street car had stopped on a track which inclined slightly towards the intersection; the street was slippery from recent rains; without a starting signal, which was customary, the car was suddenly started forward around the curve, which brought it nearer to the place at which the automobile would have to cross the tracks; in starting the motorman did not look in the direction of the much-traveled street on which the automobile was approaching; it was his duty to look, and had he looked he would have seen the automobile, and would have realized from its nearness to the crossing and the condition of the streets that it would be difficult to stop it within the intervening distance between it and the crossing; the automobile was approaching the track at a speed of eight to ten miles per hour, and the driver saw the street car standing at the edge of the curb line, and sounded his horn as a warning of his approach and to indicate his purpose to cross the tracks; to have stopped the automobile, on account of its nearness to the tracks and the condition of the streets, was impossible, these facts and the starting of the street car under such circumstances were ample evidence to submit the question of defendant's negligence to the jury, and to sustain a verdict for plaintiff.

Appeal from Jackson Circuit Court—*Hon. Daniel E. Bird*, Judge.

REVERSED.

*Charles N. Sadler, E. E. Ball* and *Louis R. Weiss* for appellant.

(1) The court erred in refusing to give the peremptory instructions in the nature of demurrers, requested by defendant. (a) The motorman had a right to as-

sume the automobile would stop. Boyd v. Railroad, 105 Mo. 371, 381; McCreery v. United Rys., 221 Mo. 18; Lewis v. Met. St. Ry. Co., 181 Mo. App. 421; Markowitz v. Railroad, 186 Mo. 358; Hicks v. Citizens Ry. Co., 124 Mo. 115; Gessner v. Met. St. Ry. Co., 137 Mo. App. 53; Barnard v. Met. St. Ry. Co., 137 Mo. App. 691; Lawson Legg v. Met. St. Ry. Co., 154 Mo. App. 290; Dering v. Milwaukee Elec. Ry., 176 N. W. 343. (b) Failure to ring the bell is not negligence when not the proximate cause of accident. Gubernik v. United Rys., 217 S. W. 34; Murray v. Transit Co., 176 Mo. 189; Hutchinson v. Railroad, 195 Mo. 549; Peterson v. Railway Co., 270 Mo. 67; Barkley v. Mo. Pac. Ry., 96 Mo. 378. (c) Even if plaintiff had not seen the car and observed it start, failure to ring the bell is not actionable negligence under the circumstances. State ex rel. v. Ellison, 271 Mo. 470; Amer. Brewing Assn. v. Talbott, 141 Mo. 683; Battles v. Railways Co., 178 Mo. App. 613; Warner v. Railroad, 178 Mo. 125; McGee v. Railroad, 214 Mo. 544; Heintz v. Transit Co., 115 Mo. App. 667; McManamee v. Mo. Pac. Ry. Co., 135 Mo. 449; McCabe v. Inter. St. Ry., 97 N. Y. Supp. 353. (2) The court erred in giving plaintiff's instruction numbered one over the objection of defendant. It authorizes a recovery upon the finding of facts which the evidence conclusively shows was not the proximate cause of her alleged injuries. Gubernik v. United Rys., 217 S. W. 34; Murray v. Transit Co., 176 Mo. 189; Barkley v. Mo. Pac. Ry., 96 Mo. 378; Peterson v. Railways Co., 270 Mo. 67; Hutchinson v. Railroad, 195 Mo. 549.

*S. L. Trusty, E. H. Gamble* and *McCanles, Kennard & Trusty* for respondent.

(1) The court did not err in refusing to peremptorily instruct the jury to find for defendant, because: (a) The demurrer was general in form. Torrence v. Pryor, 210 S. W. 432; Schinogle v. Baughman, 228 S. W. 901. (b) Starting of the car forward suddenly

off the hill into a busy intersection, with his head turned backwards, without warning, in violation of the custom to give warning, when the street was slippery, and when the motorman knew that an automobile was approaching and knew that his car would swing the curve and suddenly bring it closer to the automobile, created an issue of fact for the jury. The issue is the same as if motorman had violated a custom to stop at the crossing. Swinehart v. Rys. Co., 233 S. W. 59; Majors v. K. C. Rys. Co., 228 S. W. 517; McGurgan v. Railroad Co., 106 N. Y. Supp. 201; Lipshitz v. Third Ave. Ry. Co., 179 N. Y. Supp. 631; Hill v. Brooklyn H. Ry. Co., 130 N. Y. Supp. 387; McNamara v. Met. St. Ry. Co., 133 Mo. App. 645; Dahmer v. Met., 136 Mo. App. 448; Eskridge v. St. Ry., 170 Mo. App. 548; Malone v. Rys. Co., 232 S. W. 782; Berkley v. Mo. Pac. Ry. Co., 96 Mo. 378; Weber v. Rys. Co., 213 S. W. 535; Rowe v. Hammond, 172 Mo. App. 203; Gillispie v. Pryor, 204 S. W. 835; Harrington v. Dunham, 273 Mo. 414; Willinsky v. Nassau Railroad Co., 146 N. Y. Supp. 142; Lackey v. United Rys. Co., 231 S. W. 956; Jackels v. Rys. Co., 231 S. W. 1023. (c) There is no plea of contributory negligence and no plea that the driver was guilty of negligence imputable to plaintiff, and there is no issue of contributory negligence involved, hence if defendant was guilty of any negligence contributing to the accident the issue was for the jury. Authorities above. (d) By its instruction numbered one defendant admitted liability if the motorman did not see the automobile at the time he started his car, and also if automobile was not then in place of safety. This is the theory of plaintiff's instruction, hence defendant cannot complain. Torrence v. Pryor, 210 S. W. 432; Schinogle v. Baughman, 228 S. W. 901. (e) By its instruction numbered 10 defendant admitted the sufficiency of the evidence under the peril doctrine. Defendant created the peril. Torrence v. Pryor, 210 S. W. 432; Schinogle v. Baughman, 228 S. W. 901. (2) The court did not err in giving plaintiff's instruction

296 Mo.—34.

numbered one, because: (a) Failure to warn and the other elements of negligence were submitted in the conjunctive. Mayer v. Railroad, 198 S. W. 839; Rigg v. Railroad, 212 S. W. 878; McIntyre v. Railroad, 227 S. W. 1047; Brossell v. Box Co., 220 S. W. 984. (b) By its instruction numbered one defendant admitted liability if the motorman did not see the automobile at the time he started his car and also if automobile was not at that time in a place of safety, and the jury found against this instruction and defendant's demurrer was general. (c) Plaintiff's instruction is in the nature of a peril-doctrine instruction. It required a finding that it was perilous to start the car forward and that the motorman knew such fact when he started the car. Swinehart v. Rys. Co., 233 S. W. 62. (d) Defendant's refused instruction numbered 10 admits liability if the motorman knew of the peril in time to have prevented the collision, and plaintiff's instruction required a finding that the motorman knew of such danger when he started the car and hence knowledge in time to have prevented the collision. Torrence v. Pryor, 210 S. W. 432; Schinogle v. Baughman, 228 S. W. 901. (e) The street was slippery, the motorman knew the automobile was approaching, it was customary to sound a warning before starting the car, he knew his car would turn the curve in the path of the automobile and quickly shorten the distance and that he was starting down hill, and yet he suddenly started the car forward with his face turned backwards. Authorities under (b) point 1; Dahmer v. Met. St. Ry. Co., 136 Mo. App. 448. (f) The wet and slippery condition of the street was not made the basis of liability, but merely a fact to be found by the jury and one of the elements to be considered in determining whether or not the starting of the car forward under the circumstances shown was calculated to create peril.

DAVID E. BLAIR, J.—The action is in damages for personal injuries. From a judgment for $15,000

in favor of the plaintiff below, defendant has appealed. By reason of a dissent to an opinion written in Division Two affirming the judgment below, the case came here, where, after argument anew, the divisional opinion was rejected. In the view we take of the case we need consider only one assignment of error discussed in the divisional opinion, to-wit: The sufficiency of the evidence to support the verdict for plaintiff.

On May 18, 1918, at about four or five o'clock p. m., plaintiff and her husband, John H. DeMoss, were proceeding eastward upon Fifteenth Street in Kansas City, Missouri, in an automobile owned and operated by Mr. DeMoss, and collided with a street car of defendant at the intersection of Prospect Avenue and said Fifteenth Street.

Defendant operated its cars over both streets by means of double tracks. Fifteenth Street is approximately level at Prospect, while the latter street is down grade to the north at the intersection. One of defendant's cars moving northward on the east track in Prospect Avenue stopped at the south line of Fifteenth Street to receive and discharge passengers. When it moved forward it turned to the left toward the north track in Fifteenth Street to proceed westward on that street. Just as the street car was rounding the turn the automobile in which plaintiff was riding crashed into the side of the car near or possibly back of the middle, damaging the automobile and seriously injuring plaintiff.

Plaintiff's evidence tended to show that the down grade in Prospect Avenue caused the street car to move forward more quickly that it would have moved on level ground in making such a turn; that she saw the car standing in Prospect Avenue when the automobile was seventy-five feet away, and that she saw it start forward suddenly when the automobile was about thirty-five or forty feet away. Plaintiff immediately exclaimed to her husband, "Oh, papa," and at the same time he applied the brakes; but the automobile continued to move

forward until it struck the street car. The automobile had no chains on its wheels, although it was equipped with them. The pavement was wet and slippery from rain. Plaintiff testified that if the automobile had not skidded it would have stopped... The automobile was moving nine or ten miles per hour when plaintiff saw the street car start forward and the brakes of the automobile were applied. Plaintiff kept her eye on the street car from the time she first saw it standing at the south line of Fifteenth Street until it started forward. She testified that no gong was sounded before it started, and that the motorman was looking back in the direction where the loading of the car was taking place and did not look west as he started the street car. It was broad daylight, and the inference is clear that if the motorman had looked to the west he would have seen the automobile approaching. There was ample room in Prospect Avenue west of the street car for the automobile to turn into that street and pass the car without striking it.

The negligence relied upon by plaintiff was the starting of the street car forward into the street intersection without warning and without the motorman looking west before starting the same, when the automobile was approaching over a wet and slippery street. The allegations of the petition are rather involved, but the foregoing is the substance thereof. Plaintiff also attempted to plead the humanitarian doctrine, but such ground of negligence was abandoned.

There is evidence tending to show that the street car was moved forward quickly into the turn at the street intersection and directly in the path of the oncoming automobile, without preliminary warning and without the motorman looking to the west immediately before starting the car. It may be assumed for the purposes of the case that the motorman was negligent in so doing. The plaintiff saw the street car and must have known it would start forward as soon as it could. There was evidence that the gong is usually sounded before start-

ing forward under such circumstances. The sounding of the gong was not required to advise plaintiff of the presence of the car, for she had already seen it, but only to advise her that it was about to be started. Let it be further assumed that plaintiff was in the exercise of ordinary care in expecting the street car not to be started forward until the gong had been sounded and until the motorman had looked to the west, although she knew he was looking back as the automobile approached. Nevertheless, it does not follow that plaintiff made a case for the jury. It clearly appears from her own evidence and all the evidence upon the point that an independent, intervening and efficient cause, over which defendant had no control and which its motorman had no reason to anticipate—the skidding of the automobile—was the proximate cause of the collision without the intervention of which the collision would not have occurred. The street was wet and slippery. Although the automobile was equipped with chains for its wheels, the same were not in use. When the brakes were applied, the speed of the automobile was not sufficiently checked to avoid a collision. The brakes doubtless took hold and stopped the revolution of the wheels, but the momentum of the automobile carried it forward by reason of the wheels sliding or skidding over the wet pavement. Plaintiffs testified "If it had not skidded, it would have stopped." The inference is, therefore, conclusive that, under ordinary conditions, the automobile could have, and reasonably should have been expected to be, stopped or turned into Prospect Avenue in less than thirty-five or forty feet when going at a speed of nine or ten miles per hour and after the street car was seen to start forward and indicate that it would immediately obstruct that part of the street upon which the automobile was proceeding eastward.

If the motorman had looked to the west at the moment he started the street car, he would have seen an automobile approaching at such a distance and at such

a speed that it could reasonably be expected to be stopped or turned before reaching the street car. He had no means of knowing that ordinary precautions to put on chains had not been observed and therefore could not have anticipated that the automobile was liable not to respond to its brakes for that reason. The automobile had no superior right in the street. The motorman had the right to assume that the driver of the car would use ordinary care and hence, if he had sounded the gong and had looked to the west before starting his car and had then seen the automobile approaching, he would have been guilty of no negligence, under the circumstances, in starting his car and assuming that the automobile would be seasonably brought to a stop or turned aside.

The general rule is that "although a defendant may be negligent in the performance of some duty owed to the person injured, no liability attaches unless such negligent act was the proximate cause of the injury." [29 Cyc. 488; Stepp v. Ry. Co., 85 Mo. l. c. 233.] "If the injury could not have been reasonably anticipated as the probable result of the act of negligence, such act is either remote or no cause of injury." [29 Cyc. 495; Daneschocky v. Sieble, 195 Mo. App. 470.] If injury could not reasonably have been anticipated as the result of the negligence, save for the intervention of an independent, efficient cause, the intervention of which could not have been anticipated by the person guilty of the negligence, there can be no recovery.

Division Two very recently decided a case where these principles of law were applied to a state of facts somewhat comparable with those in the case at bar. [Borack v. Mosler Safe Company, 231 S. W. 623.] There the conceded negligence of the driver of a heavy truck in turning his team to the left of the center of intersecting streets, in violation of an ordinance, was held not to be the proximate cause of the death of plaintiff's husband, due to a blow from the end of the wagon tongue

which swung violently to one side by reason of the fall against it of one of the horses, resulting from a heavy jolt and the slippery condition of the street.

Our conclusion is that plaintiff failed to make out a case for the jury and the judgment is therefore reversed. *Graves, Higbee* and *Elder, JJ.,* concur; *James T. Blair, J.,* dissents; *Walker, J.,* dissents in separate opinion in which *Woodson, C. J.,* concurs.

WALKER, J. (dissenting).—I dissent from the reasoning and conclusions of the majority opinion; and I have deemed it proper to set forth a statement of the facts as I read them in the record and my conclusions of law applicable thereto, that my reasons for holding that this judgment should be affirmed may be clearly understood.

Plaintiff is a married woman, who at the time of the trial was about thirty-eight years of age. In May, 1918, she was *en route* to her home in Liberty, Missouri, in an automobile accompanied by her husband and two small children. The husband was at the wheel, and she and the children were on the back seat. The accident in which she received her injuries occurred at the intersection of Fifteenth Street and Prospect Avenue in Kansas City. A car on defendant's track had stopped about even with the Fifteenth Street curb line, and was standing there when the automobile approached. When the automobile was about thirty-five or forty feet from the car, the latter was suddenly started by the motorman and the collision occurred. This was either due to the sudden starting of the car, which rendered it impossible to stop the automobile on account of the slippery condition of the street before it was struck by the car, or to the fact that the motorman gave no starting signal and instead of directing the car along Prospect Avenue caused it to turn on a curved track so as to render the crossing of same by the automobile impossible without the collision. From the testimony of the plaintiff, the attitude of the motor-

man was such as to indicate that he did not look in the direction from which the automobile was coming and was consequently oblivious of its approach when he started the car. At the place where the collision occurred there were double tracks, north and south, on Prospect Avenue and on Fifteenth Street, and a curved track into Fifteenth Street off of Prospect Avenue. If the car, after it was suddenly started, had continued north on Prospect Avenue instead of running around on the curve, which threw it closer to the automobile, the accident, according to the plaintiff's testimony, would have been averted. The sudden starting of the car around the curve, the lack of a warning signal and that the motorman did not look in the direction from whence the automobile was coming are conceded. Plaintiff's evidence is that if the motorman had looked in the direction from whence the automobile was coming, he could have seen it and thus prevented the accident.

When struck, the automobile was moving at the rate of eight or ten miles per hour. The particulars of the accident are that when the street car was about half way around the curve, the automobile ran into the side and just a little beyond the middle of the car. The impact bent or crushed the fenders and radiator of the automobile, the front wheels of which ran under the car. As a result of the collision, the plaintiff was thrown over the back of the front seat of the automobile, a deep gash was cut in one of her legs and other injuries were inflicted. At the time, she was about three months pregnant. After a few days suffering, she had a miscarriage. For some time after the accident, she had to use crutches. She suffered from the injury to her leg and had frequent cramps in her toes, and her urinary organs gave her trouble from what the doctors said was spasms of the bladder. Up to the time of the trial, she was in a highly nervous condition, did not sleep restfully and has not, as theretofore, been able to do her ordinary housework.

I.   It is contended that the trial court erred in permitting the plaintiff to amend her petition after the trial had commenced and in denying a continuance to the defendant on account of such amendment. The latter con-

**Amending Petition: Surprise: Continuance.** sisted in the inserting by interlineation of the words "and bladder" immediately following the words "her kidneys" in the last paragraph of the petition. That portion of the paragraph to which the amendment (italicised) was made is as follows: "Cuts, sprains and bruises on her head, shoulders, arms, back, chest, abdomen, hips and legs, knees and ankles; her right leg below the knee was so bruised and injured as to produce a running sore, her pelvic organs were so shocked, jarred and disorganized as to produce a miscarriage and to cause hemorrhage therefrom and so injured and disorganized that they fail to properly perform their natural functions; her kidney *and bladder* were so bruised and shocked and injured that they fail to properly perform their natural functions; her back, spine, spinal column, the nerves, tissues and structures thereof, were violently sprained, wrenched, and twisted and injured so that they fail to properly perform their natural functions; her nerves and central nervous system were so shocked and injured that they fail to properly perform their natural functions, and her earning power was impaired and diminished, and she was caused to and will ever after suffer great physical pain and mental anguish, all of which injuries are permanent."

The comprehensive character of plaintiff's injuries, as alleged, is such that the necessity for the amendment under a reasonable construction of the rules of pleading is questionable. The general allegations as to the plaintiff's injuries are sufficient to permit the introduction of testimony concerning the impaired functions of her bladder.  Pathologically considered proof of the impaired condition of her kidneys would seem to authorize a showing as to the condition of the bladder as a consequence or

a resultant of such impairment. It is not necessary, however, to so rule in this case. The general allegations being, in our opinion, of such a scope as to admit of the testimony complained of without the amendment. To anyone having a fair understanding of the English language, no ground of surprise such as will authorize a continuance within the meaning of the statute (Sec. 1391, R. S. 1919) can be based upon the allowance of the amendment. Apprised as the defendant must have been by the petition, before the amendment, that proof would be offered of the impaired condition of the pelvic organs, due to the injuries, the inserting of the words ''and bladder'' in the pleading will not serve even as an attenuated basis for surprise. If the defendant came armed, as it is presumed to have come, to meet the general allegations of injuries, it must necessarily have been equally prepared to meet the proof of injuries necessarily included within those general allegations. We have always held that the matter of the granting of continuances rests in the discretion of the trial court, and, unless it is evident that such discretion has been abused, we will not interfere. There is nothing in this case to indicate an abuse of that discretion, and defendant's contention must be overruled. [Smith v. Railroad, 232 S. W. 263; Hall v. Coal & Coke Co., 260 Mo. 351, 168 S. W. 927, Ann. Cas., 1916C, 375; Rearden v. Railroad, 215 Mo. 135, 114 S. W. 961.]

II. It is contended that this case should not have been permitted to go to the jury. It will profit nothing to cite or quote from cases which may be held to present parallel or similar facts in the determination of this contention. The deduction to be drawn

Liability of Defendant: Demurrer to Evidence.

from such cases is one of analogy. Not by a comparison of testimony, but from the salient facts in each particular case, should the matter be determined.

There was no issue here of contributory negligence.

DeMoss v. Kansas City Railways Co.

The answer was a general denial, and if there was a show-ing of any negligence on the part of the defendant it was liable. To escape this alternative, it became necessary for the defendant to show that the accident was the re-sult of the negligence of the plaintiff's husband, who was driving the automobile. Failing in this, the conclusion that must flow from all of the facts is that the motorman was guilty of negligence, otherwise the accident would not have happened. Can this conclusion be sustained by the relevant testimony? The car had stopped on a track which inclined slightly towards the intersection of the streets, which were slippery from recent rains. Without a starting signal, shown to have been customary, the car was suddenly started forward, not straight along Pros-pect Avenue, but around a curve at the intersection of Prospect Avenue and Fifteenth Street, which brought it nearer to where the automobile would have to cross the tracks. In starting the car, the motorman did not look in the direction of the much-traveled street on which the automobile was approaching. That it was his duty to look, and if he had looked, he would have seen the automobile and realized from its nearness to the crossing and the con-dition of the streets that it would be difficult to stop it within the intervening distance between it and the tracks. Thus informed, it is most reasonable to conclude that he would not have started the car unless, which we do not conjecture much less presume, he was ruthlessly indiffer-ent to the result. Under these circumstances, there was ample evidence to refer the question of the defendant's liability to the jury. There is nothing in the conduct of the driver of the automobile to lessen the force of this conclusion. He was approaching the track at a speed of eight or ten miles per hour; he saw the car standing at the edge of the curb line of the street; he sounded his horn as a warning of his approach and his evident pur-pose to cross the tracks; and he was authorized in con-cluding that the car would not be started until he had passed over the crossing. Contrary, however, to what

any reasonable mind would have concluded under like circumstances, the car was suddenly started, and to stop the automobile on account of its nearness to the tracks and the condition of the streets in time to avert the collision was impossible. There is in this evidence nothing to show negligence on the part of the driver of the automobile, but the facts are ample to authorize the reference of the question of defendant's negligence to the triers of the facts. We therefore overrule this contention.

III. Objections are made to the admission of certain testimony. A physician examined as an expert by the plaintiff was asked this question: "Doctor, in your opinion might or could a laceration of the cervix be

**Expert Evidence.** caused by a miscarriage where it [the pregnancy] was of about three months' duration;" to which he answered; "I will say that it is possible." The witness was shown to have had such a personal knowledge of the facts as to enable him to form an opinion. His answer cannot be otherwise classified. We have held in numerous cases that an expert may express his opinion as to whether the condition in which he found the patient might not have been induced by the alleged negligence of defendant. We recently so held in Maloney v. Railroad, 237 S. W. 509, in which Commissioner Railey compiles all of the cases. We held in Wood v. Railroad, 181 Mo. l. c. 453, that: "It is competent for an expert medical man to give his opinion in view of the statement of facts, that the injury was the cause of the disease or condition found in the injured person" (citing cases). This opinion, as we ruled in State v. Wright, 134 Mo. 404, may be based upon what the witness has learned from an examination of the person concerning whom the inquiry is made.

ELLISON, J., in Hensley v. Railroad, 214 S. W. (Mo. App.) l. c. 289, held that an inquiry made of an expert medical man under strikingly similar circumstances to

those at bar was not improper. An excerpt from that opinion is pertinent: ·

"Plaintiff introduced, as an expert, one of the physicians who attended her. After hypothesizing statements of facts, he was asked this question: 'I will ask you to state if in your opinion as a physician, under these facts and circumstances as I have related [them], whether the blow she received was the probable cause of this miscarriage?' He answered that 'it was the probable cause.' The question is supported by Wood v. Railway Co., 181 Mo. 433, 448-455, and that case was doubtless the ground of the question and the ruling.

"It will be noticed that the witness was not asked whether the blow was the cause of the miscarriage, nor did he answer that it was the cause. He answered that it probably was the cause. Now the word 'probably' signifies an opinion on a doubtful question. It is not dogmatic. It goes no further in this instance than to say that it 'may,' it 'might', it 'is likely.' It does not substitute the witness for the jury. It is not the expression of a fact, but only an opinion of likelihood. The question and answer does not fall within the rule stated in Roscoe v. Street Ry. Co., 202 Mo. 576, 595."

The Hensley Case defines with technical accuracy what constitutes the expression of an opinion by an expert witness thus distinguishing it from the statement of a matter of fact, which would, as is stated therein, have substituted the witness for the jury. It is only the statement of facts of this character that will render an answer to such an inquiry as is here made incompetent.

If an analysis of the witness's answer be deemed necessary to determine its character, there is no dearth of judicial rulings in support of its classification as an expression of opinion rather than the statement of a conclusion or of an ultimate fact. In Topeka Ry. Co. v. Higgs, 38 Kan. 375, the word "possible" is held to mean "liable to happen, or to come to pass; capable of existing or of being conceived or thought out; capable of

being done; not contrary to the nature of things.'' In Reese v. Loose-Wiles Co., 224 S. W. (Mo. App.) 63, the word ''possible'' in a doctor's answer was held to be quite similar in meaning to the word might. which had been used in the question. In Owens v. Kelly, 6 D. C. 191, the word ''might'' was held to be a preterit of the word ''may,'' an equivalent to the words ''had power'' or ''was possible.'' We have examined with some degree of care the cases cited by the defendant in support of its contention that the testimony under consideration was inadmissible. These cases will be found upon review to have reference to testimony in which the witnesses were permitted to determine some ultimate fact or to refer to future or permanent conditions. Such was not the case at bar.

The defendant's contention was without merit, and we so rule.

IV.   Error is assigned in the refusal of the trial court to adjourn the further hearing of the case until the next day to afford the defendant time within which to

Adjournment of Trial: Additional Witnesses.

bring in additional witnesses. Other than an oral statement of counsel for the defendant, made a short time before the adjournment of the first day of the trial, was any action taken or reason assigned for such delay.

Trial courts are vested with reasonable discretion in the conduct of proceedings before them, especially in the trial of cases. In the absence therefore of anything more substantial than this application, we will not interfere with the action of the trial court in this behalf.

V.   Instruction numbered one, given at the request of the plaintiff, is assigned as error. This instruction is as follows:

''The court instructs you that if you believe and find from the evidence that on or about the 21st day of May, 1918, the plaintiff was riding in an automobile

with her husband, east-bound on Fifteenth Street, in
Kansas City, Missouri, and that as said automobile was
Instruction: Warning.     upon the intersection of Fifteenth
                          Street and Prospect Street in said
city, it came into collision with a street car being oper-
ated by the defendant; and if you further believe and
find from the evidence that at said time and place the
automobile in which the plaintiff was riding approached
said intersection for the purpose of passing over the
same, and that while said automobile was so approach-
ing said intersection one of the defendant's street cars,
north-bound on Prospect, was stopped and standing still
on Prospect Street, south of Fifteenth Street, and at
said intersection; and if you further believe and find
from the evidence that the street was wet and slippery;
and if you further believe and find from the evidence
that a sudden starting forward of said car at said time
and place, without warning, was reasonably calculated to
place the plaintiff in peril and danger of a collision be-
tween said car and said automobile; and if you further
believe and find from the evidence that defendant's mo-
torman in charge of said street car knew, or by the ex-
ercise of ordinary care could have known, of the fore-
going facts and conditions, if you find such to be the
facts and conditions; and if you further believe and find
from the evidence that notwithstanding such facts and
conditions, and knowledge or means of knowledge of
such facts and conditions on the part of said motorman,
if you find such to be true, he nevertheless negligently,
as negligence is elsewhere defined in these instructions,
started said car forward suddenly and without any warn-
ing or notice that said car as about to be or was being
so started forward, if you find it was; and if you further
believe and find from the evidence that the starting of
said car forward suddenly and without warning or notice
thereof at said time and place, if such be the facts, was
negligence as negligence is elsewhere defined; and if you
further believe and find from the evidence that as a di-

rect result of said car being so suddenly started forward without warning or notice, if you find from the evidence such to be the facts, said automobile was caused to come into collision with said street car; and if you further believe and find from the evidence that as a direct result thereof the plaintiff was thrown and injured; then your verdict will be for the plaintiff, unless you further find from the evidence that at said time and place the plaintiff failed to exercise such care for her own safety as ordinarily careful and prudent persons usually exercise under the same or similar circumstances shown by the evidence in this case, and that such failure on her part, if any there was, contributed to her injuries, in which latter event you would find for the defendant.''

It will be seen that this instruction submits conjunctively all of the elements of negligence authorized by the evidence. The defendant's contention is that a failure to give a starting signal should not have been included as one of these elements.

The word ''negligence,'' as generally interpreted, embraces and expresses a failure to exercise ordinary care or such as an ordinarily prudent person usually exercises under like or similar circumstances: It was properly so defined by instruction numbered two, given at the instance of the plaintiff. [Jackson v. So. Bell Tel. Co., 281 Mo. 358, 219 S. W. 655; Young v. Railroad, 227 Mo. 307, 127 S. W. 19; Gilbert v. Hilliard, 222 S. W. (Mo. App.) 1027.]

The requirement as to the exercise of ordinary care is general in its application; it extends to everyone who, in the exercise of any activity or the control of any instrumentality, does any act which results in injury to another. As this court said in May v. Railroad, 225 S. W. (Mo.) 660: ''Everybody regardless of any contract he may be under to render a particular service, has the duty imposed on him by law to be ordinarily careful, the circumstances considered, not to hurt other persons, and is responsible to anyone who is harmed by a breach of that duty.''

In the observance of this rule, it was required of the motorman to use every reasonable precaution to prevent this accident; one of these was to give timely warning of his purpose to start the car; which warning, it is conceded, it was customary to give. That this custom had its origin and owed its observance to a realization on the part of the defendant that it was one of the precautions necessary to prevent an accident of the character here under review, we need not stop to discuss, other than to say that customs originate either out of convenience or from necessity and owe their continued existence more often to the promotion or protection of the selfish interests of those observing them than otherwise.

Under the facts at bar, a failure to give timely warning of starting the car was of the utmost importance. [Harrington v. Dunham, 273 Mo. 414; Lackey v. United Rys. Co., 231 S. W. (Mo.) 963.] The car had been stopped at the curb line of the street on an incline in the direction of its course. When started, its momentum, by reason of this incline would necessarily be more accelerated than if on a level track. As a result, demonstrated by the facts in this case, it would tend to move rapidly around the curve. The street was slippery, the automobile, driven at the rate of eight or ten miles an hour, was, as the motorman could have seen had he looked, at least forty or fifty feet distant from the track when the car started. Had the warning been given, more opportunity would have been afforded to stop the automobile and thus prevent the collision. Under these circumstances it cannot be said that the failure to give the warning did not constitute one of the elements of negligence to be taken into consideration in determining the defendant's liability. It was, therefore, properly included in the instruction; not as defendant states as the proximate cause of the injury, but as reasonably calculated to place the plaintiff in peril and, hence, constitute negligence on the part of the defendant. [Torrance v. Pryor, 210 S. W. (Mo.) l. c. 432; Schinogle v. Baughman, 228 S. W. (Mo. App.) l. c. 910.]

296 Mo.—35.

However, as stated, the failure to warn was submitted with the other elements of negligence in the conjunctive. The acts of negligence, being thus charged, the jury, as a condition precedent to a verdict in plaintiff's favor, was required to find that the defendant was guilty of same. If, therefore, these negligent acts be construed conjunctively, the instruction was more favorable to the defendant than otherwise, and it has no ground of complaint. [Moyer v. Railroad, 198 S. W. (Mo.) 839.] But, if the instruction be construed disjunctively, the defendant still has no ground of complaint, for the reason that if a petition, to which an instruction conforms, states several acts of negligence, if not contradictory and but one be proved, it will suffice to sustain the verdict. [Moyer v. Railroad, supra; Rigg v. Railroad, 212 S. W. (Mo.) 878; Brasel v. Letts Box Co., 220 S. W. (Mo. App.) 1. c. 988.]

It is elementary that negligence is not actionable unless it is shown to have produced an injury. It is, therefore, always necessary to prove that the negligence complained of is the proximate cause of the resultant injury. An instruction, therefore, must require such a finding to sustain a recovery. Here the jury was only required to find such facts from which a necessary inference would follow that the negligence found was the proximate cause of the injury. Being clearly within this limitation, the instruction is not subject to tenable objections.

(b) Defendant complains of the refusal of the court to give this instruction: "The court instructs the jury that it is immaterial whether defendant's motorman sounded

Sounding Gong. his gong before starting his car into Fifteenth Street, and that issue is withdrawn from your consideration, and you must not further consider same in your determination of this case."

This instruction did not properly define the motorman's duty, as we have shown in the discussion and approval of instruction numbered one, given at the instance of the plaintiff, and, hence, the action of the court in refusing to give it is not error.

(c)  It is also urged that the following instruction asked by the defendant and refused should have been given:

"The court instructs the jury that if you believe and find from the evidence that the street car in question had started into Fifteenth Street ahead of the automobile in which plaintiff was riding, if so, then the street car had the right of way, and it was the duty of the driver of the automobile in which plaintiff was riding to stop said auto and let said street car pass."

This instruction is not based on the facts and was properly refused on that ground.  The plea of the right of way of the car, if it had any foundation under any circumstances, is dissipated in the face of the fact that it was not in motion as the automobile approached, but was at a standstill and so continued until the automobile was within thirty-five or forty feet of the crossing.  Under such circumstances it was the duty of the motorman, first, to have given a starting signal, or, better still, to have held the car until the track had been crossed by the automobile.  The first precaution, as we have shown, would have reduced the possibility of the collision; the second would have rendered it impossible.

Utterly at a variance with all the circumstances surrounding this action and incorrectly stating the law, the instruction was properly refused.

(d)  Like reasons may appropriately be urged to sustain the action of the trial court in refusing to give defendant's instruction numbered eleven, with which we will not burden this opinion by inserting the same herein.

VI.  Some serious misgivings arise as to whether the amount of the damage awarded was not excessive.

Personally, as indicated in former cases, we have contended that unless a verdict was so evidently excessive as to constitute an unreasonable compensation for

the injury sustained, we should not interfere with same. In the presence of evidence of such a verdict, we have maintained that the care should be reversed and remanded as indicating other than a lack or prejudice and a reliance upon relevant proof which should characterize a fair verdict. A majority of the court, however, do not coincide with this view and insist that whether the verdict rendered is deemed excessive a *remittitur* should be required as a condition precedent to the affirmance of the judgment. Measuring this verdict, therefore, not according to my personal views, but the will of the majority, and thereby obviating a reversal and remanding of the case, there being no other error, the amount awarded should be reduced to ten thousand dollars. Upon this *remittitur* being made, the judgment of the trial court should be affirmed. *Woodson, C. J.,* concurs.