FRANCES CLARA HAAKE, a Minor, by Next.
Friend CHARLES G. HAAKE, Respondent, v..
WILLIAM H. DAVIS, Appellant.

**Kansas City Court of Appeals, June 17, 1912.**

1. **NEGLIGENCE: Automobiles.**  Plaintiff, a girl six years old,.
   while in a public street with a large crowd of adults and chil-
   dren at the scene of a collision between a street car and an.
   automobile, was struck down and run over by an automobile
   which was driven at a dangerous rate of speed through the
   crowd which opened a way for said automobile.  The rear
   wheel ran over and broke her leg near the hip.  *Held,* that the
   evidence, as a whole, was sufficient to warrant the submission
   of the case to the jury.

2. **PLEADING: Specific Negligence: Evidence.**  Where specific
   acts of negligence are pleaded, recovery must be upon proof
   of one or more of such pleaded acts, and the burden is on the
   pleader to show not only negligence as alleged but that such
   negligence was the direct and proximate cause of the injury..

Appeal from Jackson Circuit Court.—*Hon. E. E.
Porterfield,* Judge.

AFFIRMED.

*Battle McCardle* for appellant.

*Reinhardt & Schibsby* for respondent.

JOHNSON, J.—Plaintiff, a girl six years old, was
struck and run over by an automobile owned and op-
erated by defendant and, by her next friend, insti-
tuted this suit to recover damages for the injuries she
sustained.  The answer in legal substance is a general
denial.  The cause is here on the appeal of defendant
from a judgment of seven hundred and fifty dollars
recovered by plaintiff in the circuit court.

The injury occurred about six o'clock in the af-
ternoon of April 26, 1910, on Grauman avenue in Kan-

sas City at a place just east of Holmes street. Shortly before the injury a street car running on Holmes street collided with and disabled an automobile and the wrecked vehicle had been removed from the track and placed in Grauman avenue, a short distance east of Holmes street. The place is in a thickly populated residence district and in a short time a large crowd, variously estimated at from forty to one hundred persons had collected around the automobile. The crowd was made up of adults and children of various ages, the children predominating. There was much noise and confusion and some of the children were playing. The street was filled with the crowd when defendant, driving a two-seated gasoline runabout approached from the west on Grauman avenue.

Witnesses for plaintiff testified that the car came into the intersection of Holmes street at a speed of twelve or fifteen miles per hour; that it slowed down at the crossing of the street car tracks, and continued on eastward through the crowd at a speed much faster than a fast walk. The crowd opened a way for the automobile and there is evidence tending to show that plaintiff was standing at the edge of the crowd in a place to which she had moved a moment before. Some part of the south side of the automobile struck her, probably the mud guard or fender over the front wheel, and threw her down. The rear wheel on that side of the car ran over her and broke one of her legs near the hip. It is alleged in the petition that the car "was recklessly, carelessly and negligently driven against, upon and over this plaintiff," and the specific acts of negligence charged are, first, in running the car at a high and dangerous speed and, second, in failing to exercise reasonable care to avoid the injury after defendant discovered or should have discovered the dangerous position of plaintiff.

Defendant testified that when he turned into Grauman avenue he was running on the high gear but as he

approached the street car tracks he reduced speed almost to a full stop, changed to the low gear, blew the horn several times, saw the crowd, which he thought consisted of seventy-five or one hundred persons, open a way for his passage and, on a signal from several people in the crowd, proceeded forward at a speed of not over one mile per hour, the slowest speed the car could go and retain its power. He states that he had his foot on the brake and was attentively watching his course to see that no one got in the way of the car; that suddenly, as he had passed about half through the crowd, plaintiff came rapidly from the south and ran into the car either at the fender over the front wheel or at the step. We quote from his testimony: ''I changed my gear and practically stopped on the west side of Holmes street, on the car tracks, and blew my horn several times until the crowd spread apart, and several people beckoned for me to come on; and, then I went just as slow as possible on a low gear through the crowd; and after I had gotten probably half way through, I noticed a little girl seemed to pitch a little to the head of the center of my car, and I immediately turned it up, and stopped within six feet. I felt that the wheel of the car had gone over this child, and I stopped within six feet—but, I had passed through the crowd—entirely through. . . . I never saw the child until I saw this little thing dart out of this crowd, after I was about half way through the crowd—saw her pitch through the crowd; and, I immediately turned on the lawn, and threw my power off. . . . Q. You stated, I believe, that you tooted your horn, and some people motioned to you to come on? A. Yes, sir. Q. And that the crowd then parted? A. Yes, sir.

''Q. To what extent did they part? A. There was no one in the street north of the car. They all spread to the south toward the injured car that was on the south side of the street. There was some peo-

ple on the sidewalk at the north; but not in the street.
. . . .

"Q. Then how fast do you say you were going
when you were crossing Holmes street and went sev-
enty or seventy-five feet east of Holmes street, at the
time this child was struck? ·A. Just crawling along
as slowly as possible, with my feet on the brakes. .

"Q. What part of your machine first struck the
child? A. I judge it was the fender. . . .

"Q. What part of this fender on the right side
of your machine struck the child first, the front part
or the center part? A. The child struck the step, just
about the center of the machine.

"Q. You mean to say that the child ran from the
south and ran against your machine? A. Ran against
the machine; seemed to dive right against it.

"Q. Instead of the machine striking the child?
A. That is the best of my recollection; yes, sir."

At the request of plaintiff the court gave the fol-
lowing instruction: "It is the duty of the defendant,
in running his automobile through the streets of a pop-
ulous city, to use ordinary care to so regulate the
speed of his automobile as not to injure any one, and
failure to use such care is negligence, and the court
instructs the jury that if you find and believe from the
evidence that, on April 26, 1910, at about 6 p. m., the
plaintiff, while in the exercise of ordinary care her-
self (if you find she did use such care), as defined in
another instruction, was standing or playing on Grau-
man avenue, and if you further find that the defendant,
while running his automobile, mentioned in the evi-
dence, failed in the above defined duty, and negligent-
ly ran his automobile into, upon or over plaintiff (if
he did so), and if you further find that, by reason
of the above, the plaintiff was injured, then your ver-
dict must be for the plaintiff."

It is insisted by defendant that its request for an
instruction peremptorily directing a verdict in its fa-

vor should have been given. Counsel argue that there is no proof of the allegation that the automobile "was driven against, upon and over this plaintiff" while she was standing in the street and that plaintiff cannot be allowed to recover on any other act of negligence than that alleged in her petition. The rule that a plaintiff in a negligence case who pleads a specific act or acts of negligence must recover, if at all, on proof of the existence of one or more of such pleaded acts is a familiar one as is also the rule that the burden is on the plaintiff not only to show by evidence that the defendant was negligent as alleged but that such negligence was the direct and proximate cause of the injury. The causal connection between the negligence and the injury must not be left in the realm of doubt or conjecture. [Warner v. Railroad, 178 Mo. 125; Gorannson v. Mfg. Co., 186 Mo. 300; Trigg v. Land Co., 187 Mo. 227; Byerly v. Light Co., 130 Mo. App. 593.]

But the burden of plaintiff does not compel her to prove the negligence or its causal relation to the injury by direct and positive evidence. The existence of such ultimate facts may be established by circumstantial evidence. No witness introduced by plaintiff saw the car strike her, but she was seen standing close to the south line of the way opened in the crowd for the car, was seen to fall, and the fact that the rear wheel ran over her, in effect, is conceded. Defendant says there was a collision between plaintiff and the mud guard or step but that the collision was caused by plaintiff darting out from the crowd and running against the car. He is contradicted by the witnesses of plaintiff not on the fact that there was a collision but on the fact that it was caused by plaintiff running against the fender and not by the fender striking her. The evidence, as a whole, supports an inference that defendant brushed the side of the car against plaintiff while she was standing still and knocked her down;

and further, the inference is very strong that the car was being run through the crowd at a high and dangerous speed.

To run an automobile at ten or twelve miles per hour on an open, unobstructed street might not be negligence, but to run one at half that speed through a large crowd of playful, noisy children, would be an act of gross negligence, since it would be almost certain to result in injury to some of the children. The evidence of plaintiff is to the effect that the car was run through the human lane opened for its passage at a speed faster than a fast walk—at five or six miles per hour—and we think defendant's counsel is wrong in the view that this evidence is opposed to the plain and undisputed physical facts of the situation. The fact that defendant, who says he was in a position to make immediate use of the appliances for stopping, could not stop in less than six feet, strongly negatives his assertion that the car was barely creeping and was not going to exceed one mile per hour. The jury were entitled to the belief that an automobile going at that speed and under such perfect control could be stopped at once, in less than a foot, and that since it ran as much as six feet after defendant put forth his utmost effort to stop, it must have been going at about the speed stated by plaintiff's witnesses. It is hard for us to believe that a child struck by the outer edge of the mud guard of a car running only a mile an hour would be thrown down and run over by the rear wheel with the autoist doing his best to stop. To our minds the version of the injury given by the witnesses for plaintiff is more consistent with the undisputed physical facts than that given by defendant. It was the duty of defendant in running his car to exercise care commensurate with the exigencies of the situation. [Hall v. Compton, 130 Mo. App. l. c. 681; Ladd v. Williams, 104 Mo. App. 390; McFern v. Gardner, 121 Mo. App.

1; Engleman v. Railway, 133 Mo. App. 514.] An ordinarily careful and prudent person in his position would have realized the danger of running through a large, noisy, mixed crowd in any but the most cautious manner. In such cases the greatest care is only ordinary care. We hold that plaintiff's evidence presented issues of fact for the jury to determine and that the court did not err in overruling the demurrer to the evidence.

We must rule against the contention of defendant that the instruction we have copied contains prejudicial error. The definition in the opening clause of the degree of care defendant was bound to exercise correctly expresses the true rule. It does not contain the suggestion that defendant was an insurer of the safety of plaintiff and as applied in the succeeding portions of the instruction the rule thus stated did not enlarge the scope of the pleaded negligence. There is no prejudicial error in the record and accordingly the judgment is affirmed.