## BOOTH et al. v. GILBERT.

No. 10261.

Circuit Court of Appeals, Eighth Circuit.

Oct. 31, 1935.

STONE, Circuit Judge, dissenting.

———◇———

James R. Claiborne, George E. Heneghan, and Bishop & Claiborne, all of St. Louis, Mo., for appellants.

H. Plantagenet Tudor, of St. Louis, Mo. (Bert E. Strubinger and William H. Tombrink, both of St. Louis, Mo., on the brief), for appellee.

Before STONE and FARIS, Circuit Judges, and RAGON, District Judge.

FARIS, Circuit Judge.

Appellee in the trial court had judgment for $10,000 as damages for personal injuries accruing to him in an automobile collision, between the car of appellee and the car of appellant Booth, at the time an employee of appellant Cutler-Hammer, Inc., which collision, it is alleged, was caused by the negligence of Booth.

On May 18, 1932, about 4 o'clock in the afternoon, at the intersection of Whittier street and Westminster place in the city of St. Louis, Mo., a collision occurred between an automobile driven by appellee and an automobile driven by Booth. Appellee was going east on Westminster, and Booth, south on Whittier, which, at the point of collision, cross each other at right angles. So far as the record shows, there was at the time no very congested traffic at the place. In addition to the two cars involved, there was another car, fifty feet south coming north on Whittier and one very close to Whittier going west on Westminster. The latter swerved north in the rear of Booth's car and put on the brakes and Booth slowed down. Almost instantly his car was struck in front by the left rear end of appellee's car which attempted to swerve south and to the right. Booth's car was turned partly around and headed southwest, but stopped within about five feet from the point of collision. This point was at or near the thread or center point of the intersection of the two streets. After the contact, the car of appellee continued east, some twenty-five or thirty feet, turned toward the southwest and ran over the curb, there some six inches high, and struck and came to rest against a tree in the grass parking, and was badly wrecked both at the left rear and on the left side where it hit the tree. Appellee was thrown bodily from the car to the street and struck the sidewalk some four to six feet from the car, seemingly when his car hit and ran over the curb, or, if not, when his car hit the tree, which was barked by the contact. The car of Booth, beyond a small dent in the right front fender and the breaking of the right-hand support of the front bumper, was not at all damaged, nor was Booth at all hurt, or moved from his seat.

Appellee was seriously hurt, confined for many weeks in a hospital, where infections set in and blood transfusions were had, and his injuries to one leg and one arm are such and so serious that he will be crippled permanently.

Seven allegations of alleged negligence are set up in appellee's petition. In the light of the record, the briefs, the assignments of error, and the preservation thereof for review, it is not necessary to make mention of but three. These are: (a) That defendant Booth was, at the time and place of the collision, driving his automobile at "a highly excessive and dangerous rate of speed"; (b) that Booth was not driving his automobile as close to the right-hand curb of Whittier street as was practicable; and (c) that defendant Booth negligently refused, having reached the intersection last, to accord to plaintiff, who was on the right of Booth, the right of way over and across the intersection.

Under the charge of the court the above three alleged acts of negligence were submitted to the jury, as also was the alleged contributory negligence of plaintiff, for that he was driving at a highly excessive and dangerous rate of speed. The other pleaded act of plaintiff's alleged contributory negligence, for that he was not driving "as close as

practicable to the right hand side of said McPherson (sic) avenue," was not submitted, though warranted by the evidence of the witness Simpson. But by reason of the failure of appellants to properly, or at all, save the last-mentioned point for review, it goes out of the case.

Seventeen alleged errors are set out in the brief of appellants. Twelve of these are, in effect, that the verdict was not based on sufficient evidence to legally warrant the rendition of a verdict in favor of plaintiff.

■ Both at the close of the evidence for plaintiff and at the close of all of the evidence in the case, appellants prayed an instruction in the nature of a demurrer to the evidence. These proffered instructions, mutatis mutandis, were precisely similar and read, "the court instructs the jury at the close of the plaintiff's evidence, that your verdict shall be for defendants." As forecast, the peremptory instruction requested at the close of all of the evidence differed from that above quoted, only for that it used the term "all of the evidence," in lieu of the term "plaintiff's evidence." Under the repeated rulings of this court, these motions for a directed verdict were insufficient in definiteness to preserve the point for review, in that they each failed to call the attention of the trial court to the point or points on which the motions were bottomed. Massachusetts Bonding & Insurance Co. v. R. E. Parsons Electric Co. (C. C. A.) 61 F.(2d) 264, 92 A. L. R. 218; Mansfield Hardwood Lumber Co. v. Horton (C. C. A.) 32 F.(2d) 851; Falvey v. Coats (C. C. A.) 47 F.(2d) 856, 89 A. L. R. 1; Standard Accident Ins. Co. v. Rossi (C. C. A.) 52 F.(2d) 547. See, also, Adams v. Shirk (C. C. A.) 104 F. 54, 56; New York Life Insurance Co. v. Doerksen (C. C. A.) 75 F.(2d) 96. Confessedly, there exists, touching the procedural necessity of a definite statement of the grounds relied on in a demurrer to the evidence, some diversity of opinion. All this is pointed out in the late case of New York Life Insurance Co. v. Doerksen, supra, from the Tenth Circuit, wherein this diversity of opinion among the several circuits is rather fully discussed. But even that rule, to which seemingly the Tenth Circuit adheres, could not save the motions for a directed verdict here under discussion. This for the reason that the only debatable ground possibly tenable for the sustaining of a motion for a directed verdict in the case at bar is involved and somewhat recondite. That ground is that the plaintiff was himself guilty of contributory negligence, for that he drove his car, at and before the collision, at a highly dangerous and excessive speed. Upon the bare face of the oral testimony, this fact is not clearly apparent. But when the physical facts are closely analyzed and considered, it it fairly clear that these latter facts tend to prove that the testimony of appellee and his single witness on the point of appellee's speed is erroneous, and that appellee was driving his car, at the time of the collision, at a far greater speed than was defendant Booth. In such case, of course, a plaintiff may not recover on the ground of excessive speed. In such situation, regardless even of the stringent rule in this circuit, but even according to the rule in the majority of the circuits, it was incumbent on appellants in their motions for a directed verdict to make a definite statement of the ground, or grounds relied on. This they utterly failed to do, and so twelve of the alleged errors relied on must fall by the wayside and go out of the case.

■ The contention of appellants that the court erred in charging the jury on the alleged failure of defendant Booth to drive his car as near the west curb of Whittier street as was practicable cannot be noticed here, because it is not found among appellants' assignment of errors, and appears only in the motion for a new trial with which ordinarily an appellate court is not at all concerned.

■ Two other of appellants' assignments of error may be considered together and deserve but short shrift. These are: (a) That the verdict rendered was against the weight of the evidence; and (b) that the amount awarded plaintiff as damages by the verdict of the jury was excessive. It is, we think, too well settled for argument to the contrary that a federal appellate court may not consider whether or not a verdict of a jury is against the weight of the evidence, if so it be that there is substantial evidence to uphold it. New York, L. E. & W. R. Co. v. Winter, 143 U. S. 60, 12 S. Ct. 356, 36 L. Ed. 71; Ætna Life Ins. Co. v. Ward, 140 U. S. 76, 91, 11 S. Ct. 720,

35 L. Ed. 371. The matter of determining whether a verdict is, or is not, against the weight of the evidence, is for the trial court to consider on a motion for a new trial; nor is the granting or refusal of such a motion assignable as error in an appellate court. Winter Case and Ward Case, both supra. These two cases also dispose of appellants' contention of error, for that the verdict in the instant case was excessive. This matter of the alleged excessiveness of the verdict is also ordinarily to be relegated to the discretion of the trial court, to be set in action by a motion for a new trial. There are no facts, so far as we can find from the record, to take this case out of the general rule above announced. And so we conclude that the contentions that the verdict is excessive and that it is against the weight of the evidence must both be disallowed. Lacking authority to review these two contentions, the views of this court upon them are wholly irrelevant, and even if we were convinced that the verdict is contrary to the great weight of the evidence, no legal purpose would be attained by giving voice to our convictions.

█ So, the only point in the case, which it is possible for this court to review, is the contention of appellants that the court nisi erred in charging on, and leaving to the jury's determination the matter of the alleged negligence of appellant Booth for that he was driving his car at and just before the collision at a "high, excessive and dangerous rate of speed," as charged in the petition of appellee. Appellants contend in support of this allegation of error that there was no sufficient evidence in the case to show that the car of Booth was being driven at an excessive rate of speed. The petition, all relevant parts of which we quote above, does not charge any definite rate of speed, but in effect may be said to charge speed as a matter of common-law negligence. The testimony upon the question of speed is meager and the physical facts bearing thereon quite complicated. The witness Stevens testifying for plaintiff said that he observed the car of appellant Booth, coming south in Whittier "at about twenty-five, maybe thirty miles an hour." Booth himself said he was coasting at about sixteen miles an hour. Simpson, a witness for defendant, said that Booth's speed was only about one mile an hour.

But, of course, upon the point as here presented, heed must be paid alone to plaintiff's evidence and the concessions of a defendant, and not to what witnesses for defendant may say. This is all of the oral evidence on the question of the rate of Booth's speed. True it is that Stevens, for plaintiff, spoke doubtfully, since he says in effect that his observation of Booth's speed was only while Booth drove about five feet. But it is also true that the witness says that the appellee entered the rectangle of the intersection first; that appellee was then driving at a rate of twelve to fifteen miles an hour. This square or rectangle was thirty feet wide north and south, and thirty-six feet long east and west. So, Booth had to drive thirty feet while appellee had to drive thirty-six feet in order to clear the intersection, and they had, respectively, to drive fifteen and eighteen feet in order to meet at the center thereof; for the witnesses fairly agree that the collision occurred very near the center of the rectangle made by the intersection of Whittier and Westminster Place. While not conclusive, since the witness does not tell how many parts of a second elapsed after appellee entered the rectangle of the intersection, before both entered it, it yet indicates rather clearly that the estimate of one mile an hour as made by Simpson is wholly unreliable.

At the time appellant Booth approached this intersection, a car, fifty feet away and south, was coming north on Whittier, a car was moving west in Westminster very close to Whittier, and appellee Whittier, a car was moving west in Westminster toward Whittier. So, four cars were at the same moment about to occupy the rectangle of intersection. Moreover, a number of cars were parked at the curbs of the intersecting streets, particularly along the south curb of Westminster.

So the sole question is: Was the rate of speed of Booth under the facts and situation a matter for the court to determine as a question of law, or was it one to be submitted to the jury as a question of fact, under the statute of Missouri, which controls this question of speed; for the court had either to leave it to the jury by his charge, or he had to conclude that the evidence as to Booth's speed was such *as to make it a matter of law* that it did not under the terms

of the Missouri statute constitute a high and excessive speed. The statute reads thus: "Every person operating a motor vehicle on the highways of this state shall drive the same in a careful and prudent manner, and shall exercise the highest degree of care, and at a rate of speed so as not to endanger the property of another or the life or limb of any person, provided that a rate of speed in excess of twenty-five miles an hour for a distance of one-half mile shall be considered as evidence, presumptive but not conclusive, of driving at a rate of speed which is not careful and prudent, but the burden of proof shall continue to be on the prosecution to show by competent evidence that at the time and place charged the operator was driving at a rate of speed which was not careful and prudent, considering the time of day, the amount of vehicular and pedestrian traffic, condition of the highway and the location with reference to intersecting highways, curves, residences or schools." Section 7775, R. S. Mo. 1929 (Mo. St. Ann. § 7775, p. 5197).

■ It will be noted that this statute fixes no definite limit, in miles per hour, of the speed at which a car may lawfully be driven on the public highways of Missouri. (In passing, it may be observed that no ordinance of the city of St. Louis is involved, because no such ordinance is either pleaded or proved.) The statute simply requires that a car shall be driven in a careful and prudent manner; that the driver shall exercise the highest degree of care; and that the rate of speed shall not be such, or so great, as to endanger the life, limb, or property of others. True, the statute does say that a speed in excess of twenty-five miles an hour, when maintained for a distance of one-half a mile, shall be presumptive evidence, but not conclusive evidence, of the lack of care and prudence. But even if the rate of speed so named be exceeded, the statute says the burden is still on the prosecution to show, by proof of the surroundings and situation—which may include, weather, time of day or night; intersections with other highways; curves in the highway, or lack thereof; density of population, and of pedestrian and vehicular traffic, and condition of the road—that the speed exercised was not, the time and place regarded, careful and prudent, and was

therefore excessive. On the other hand, it seems fairly plain, from the language of this statute, that a driver may be guilty of driving at an excessive speed, even though he shall drive at a speed less than twenty-five miles an hour. Wilson v. Spuhler (Mo. App.) 20 S.W.(2d) 556. The statutory test of excessive speed, vel non, is therefore not whether the driver has, or has not, driven at a rate in excess of twenty-five miles per hour, but the test is whether he drove his car in a careful and prudent manner exercising in so doing the highest degree of care, having due regard, we repeat, to his situation and surroundings, or some of them above set out. O'Donnell v. Wells, 323 Mo. 1170, 21 S.W.(2d) 762; Bramblett v. Harlow (Mo. App.) 75 S.W.(2d) 626; Haake v. Davis, 166 Mo. App. 249, 148 S. W. 450; Wilson v. Spuhler, supra; La Duke v. Dexter (Mo. App.) 202 S. W. 254; Llywelyn v. Lowe (Mo. App.) 239 S. W. 535; State ex rel. Hauck Bakery Co. v. Haid, 333 Mo. 76, 62 S.W.(2d) 400, 403. The cases cited last above are all Missouri cases. In the Hauck Bakery Case, supra, it was said by the Supreme Court of Missouri that: "Even though the speed of relator's truck as it entered the street intersection may have been only eighteen or twenty miles an hour, as testified by its driver, it is to be remembered that when, as here, violation of statutory or ordinance speed limit is not relied on and the question of excessive speed is to be determined by common-law principles, whether or not the speed of a motor vehicle is negligent is to be determined in view of the existing circumstances and conditions and the exigencies of the situation and is usually a question for the jury. What would be due care in one situation might be negligence in another. See Woods v. Kansas City Light & Power Co. (Mo. App.) 212 S. W. 899, 902; Engelman v. Metropolitan St. Ry. Co., 133 Mo. App. 514, 520, 113 S. W. 700; Bongner v. Zeigenhein, 165 Mo. App. 328, 147 S. W. 182; Haake v. Davis, 166 Mo. App. 249, 148 S. W. 450; Ginter v. O'Donoghue (Mo. App.) 179 S. W. 732, 734."

■ The casualty here under discussion took place at a street intersection in a large and populous city of Missouri, as we are entitled to notice judicially. Four cars moving north, east, west, and south respectively, were about to occupy

at the same instant, and pass each other in, a space thirty feet by thirty-six feet in area. The speed to which Stevens swore was with all its qualifications and doubt for the jury. He said Booth's speed was "25 maybe 30 miles an hour." The jury then was warranted in finding that Booth's speed was over twenty-five miles an hour. It was, of course, their duty to consider whether the physical facts were so clear as utterly to impeach Stevens. If they were not, then the court could not say as a matter of law that Booth's speed was not in excess of twenty-five miles an hour; nor could he say that such rate of speed in the situation and surroundings was not excessive. We are fairly driven to the conclusion that Booth's rate of speed was here a question of fact and not one of law. The matter of speed is governed by a Missouri statute, and the construction of that statute by the Supreme Court of Missouri must be followed by us, regardless of our own views of its interpretation.

So, upon the whole record, we are constrained to conclude that the trial court, when his action is viewed in the light of the decisions of the · Missouri courts, construing section 7775, supra, did not err in submitting to the jury the question of the rate of speed at which Booth was driving at and just before the collision. The Missouri cases are well-nigh unanimous in saying that under the Missouri statute, the question of excessive speed is *usually a jury question*. Our own brief analysis of this statute tends to corroborate the correctness of the latter view.

Finding no error that we are authorized to notice and consider, we are constrained to affirm the case, which accordingly we order.

STONE, Circuit Judge (dissenting).

Even the excellent opinion of Judge FARIS has not convinced me that this judgment should not be reversed. The trial court submitted to the jury three grounds of negligence. These three grounds were unrelated and were as follows: Excessive speed, violation of plaintiff's legal right of way, and violation of a law requiring defendant to drive as near his right curb as practicable. The charge authorized the jury to bring in a verdict for plaintiff if the jury found any one of these three grounds existed.

The verdict was general. If any one of these grounds was improperly submitted to the jury, a new trial should result because it is impossible to determine upon which ground or grounds the jury based its verdict and it is entirely possible that it may have been solely upon the erroneous ground. Wilmington Star Min. Co. v. Fulton, 205 U. S. 60, 77, 79, 27 S. Ct. 412, 51 L. Ed. 708; Chicago, · St. P., M. & O. Ry. Co. v. Kroloff, 217 F. 525, 528 (C. C. A. 8); Travelers' Ins. Co. v. Wilkes, 76 F.(2d) 701, 705 (C. C. A. 5); Baltimore & O. R. Co. v. Reeves, 10 F.(2d) 329, 330, 331 (C. C. A. 6); Erie R. Co. v. Gallagher, 255 F. 814, 817 (C. C. A. 2); Buckeye Cotton Oil Co. v. Sloan, 250 F. 712, 722 (C. C. A. 6).

Appellants specifically objected and excepted to that portion of the charge submitting the issue of excessive speed and strongly urge that matter here. I am unable to escape the conclusion that they are right in that contention and, therefore, that the case should be remanded. I am so convinced by the presence of certain physical facts which, to me, are entirely inconsistent either with excessive speed by defendants or with moderate speed by plaintiff (contributory negligence in this respect being pleaded) at the time of the collision. These physical facts are established by witnesses for both parties and are undisputed by any witness. Where physical facts so established and undisputed are present, they must be taken by court and jury as being true and they and the necessary inferences therefrom must prevail over oral testimony to the contrary. Chicago, M., St. P. & P. R. Co. v. Linehan (C. C. A.) 66 F.(2d) 373, 380; Liggett & Myers Tobacco Co. v. De Parcq (C. C. A.) 66 F.(2d) 678, 683; Ed. S. Michelson, Inc., v. Nebraska Tire & Rubber Co. (C. C. A.) 63 F.(2d) 597, 600, certiorari denied 290 U. S. 634, 54 S. Ct. 52, 78 L. Ed. 551; United States v. Harth (C. C. A.) 61 F.(2d) 541, 544; American Car & Foundry Co. v. Kindermann (C. C. A.) 216 F. 499, 502; Missouri, K. & T. Ry. Co. v. Collier (C. C. A.) 157 F. 347, 353, certiorari denied 209 U. S. 545, 28 S. Ct. 571, 52 L. Ed. 920 —all being cases in this court. While this rule is true generally, it is particularly applicable where the oral testimony is as to speed or other matters as to which the witnesses must necessarily make

estimates in situations so sudden, unexpected, and brief as to make accuracy impossible in making estimates or stating opinions.

This evidence relates to the force with which plaintiff's automobile travelled after the collision and to the effect of the collision upon defendant's car. To understand the relation to the entire situation of this evidence and its effect thereon it is necessary to describe the accident. On a clear afternoon plaintiff, a mature man, was driving his car eastward on Westminster avenue in St. Louis, Mo. Defendant Booth was driving his car south on Whittier street, which intersects Westminster avenue. The collision occurred at this intersection. The testimony of plaintiff himself and of all other witnesses who testified upon that point is that the front of Booth's car came in contact with the left (north) side of plaintiff's car near the left rear wheel. Immediately following the collision plaintiff's car passed over a five inch curbing at the southeast corner of the intersection and stopped when the rear left-hand portion of the car (at or near the rear wheel) collided with a tree standing on a grass park space five feet inside the curb line. At some time between the collision and the striking of the tree plaintiff was thrown from his car with such force as to render him unconscious and to seriously injure him. While there is some divergence in the testimony, it seems fairly inferable therefrom that he was thrown out before the car struck the tree and probably as it came in contact with the curbing.

It is quite clear that plaintiff's car necessarily proceeded with considerable violence after the collision and before striking the tree or it would have been impossible for him to have been thrown so violently therefrom. Thus we have established an indisputable physical fact that plaintiff's car was moving very violently immediately after the collision and until it struck the curbing and thereafter the tree. There are only two plausible ways in which this could have occurred, and the question is whether the physical facts clearly established one or the other. One of them is that Booth's car struck plaintiff's car so violently as to cause these results. The other is that plaintiff was proceeding so rapidly at the time of the collision that the deflection caused by the collision or his lack of control of the car immediately thereafter was the cause.

The other physical fact is the condition of Booth's car. Not only the testimony of defendants' witnesses (which might be disregarded), but also the testimony of a policeman who was a witness for plaintiff, was in entire harmony and undisputed that the only damage done to Booth's car was that the right-hand bracket of the front bumper was broken and there was a comparatively slight dent in the right front fender. The lamps were not broken and there was no other damage to the car. The car was so little damaged that it was driven away under its own power.

Considering the undisputed violence of movement of plaintiff's car after the collision and considering the relatively slight damage done to Booth's car by the collision, it is impossible for me to believe that Booth's car could strike plaintiff's car with force enough to knock or throw it with the violence here present and not do more damage than the undisputed evidence shows was done to Booth's car. These physical facts standing established by the evidence introduced by plaintiff can be explained in only one reasonable way and that is that plaintiff was proceeding at such a rapid rate of speed that the contact of Booth's car served simply to swerve him from his course or to cause the car to get out of his control. It would be impossible for plaintiff's car to have gone over this curbing with sufficient violence to forcibly throw him from it and to smash violently into the tree had he been going at a reasonable rate of speed.

There is another undisputed physical fact leading to the same conclusion. This is the position of plaintiff's car when it came to rest on striking the tree. The testimony of both parties is undisputed that the left rear portion of plaintiff's car struck the tree with considerable violence and that when the car stopped it was faced *southwest*. This position of the car is entirely inconsistent with its being thrown or pushed over the curb and into the tree through the force of the collision. At the time of the collision plaintiff's car was proceeding eastward. The contact with Booth's car was from the north at the left rear portion of plaintiff's car. If considerable force

had been exerted at that place the inevitable tendency would have been to have shoved or thrown the rear part of plaintiff's car toward the south with a tendency to face it *northeast*. How it could have been completely reversed so as to face southwest within the relatively short distance between the collision and the curb and the tree is incomprehensible, if such force from defendants' car had been present.

Considering the above-established physical facts, it seems to me an inevitable conclusion that plaintiff's car was proceeding with negligent rapidity at the time of the collision, and that defendants' car was not. If this view is correct, it disposes of the case in so far as the negligence based on the ground of excessive speed of defendants' car.

The evidence of plaintiff seems to me sufficient for submission to the jury as to the two other grounds even though the excessive speed of defendants be not submissible. I think this excessive speed is not necessarily a bar to recovery on either of these two grounds when it is considered that it was the rear portion of plaintiff's automobile which was struck, and it is well argued in his brief that had the Booth car been well over on the west side of Whittier street plaintiff would have gotten by without a collision.

It seems to me the case should be remanded on the ground that the contributory negligence of plaintiff was conclusively established as a defense to any excessive speed of defendants and the absence of excessive speed on the part of the defendants was conclusively shown and, therefore, the issue of recovery for excessive speed should not have been submitted.