William SCHMIDT, an Infant, by Eugene Schmidt, Next Friend, Respondent,

v.

Gertrude H. ALLEN, Appellant.

No. 45841.

Supreme Court of Missouri, Division No. 1.

July 8, 1957.

Carter & Fitzsimmons and Lee M. Carter, Clayton, for appellant.

Val Terschluse and Strubinger, Tudor, Tombrink & Wion, St. Louis, for respondent.

DALTON, Judge.

Action for $100,000 damages for personal injuries sustained by plaintiff, a four year old child, when he was struck by defendant's automobile near the center of Big Bend Boulevard in St. Louis County. Verdict and judgment were for defendant, but the trial court set aside the verdict and granted plaintiff a new trial on the ground that the verdict was against the weight of the evidence, was contrary to the law and evidence and because of error in the giving of an instruction. Defendant has appealed from the order granting plaintiff a new trial.

Defendant-appellant here contends that plaintiff failed to make a submissible case

for the jury; and that the court abused its discretion in setting aside the verdict and granting a new trial. Appellant says that there was no substantial evidence to sustain a verdict for plaintiff; and that defendant's motion for a directed verdict, as offered at the close of all the evidence, should have been sustained.

 In determining whether the trial court properly exercised its discretion in awarding a new trial on the ground that the verdict was against the weight of the evidence, a discretionary ground, we must examine the record to ascertain if there was sufficient substantial evidence to justify the submission of plaintiff's case to a jury. If plaintiff failed to make out a submissible case, the order granting a new trial to plaintiff, after verdict for defendant, would be arbitrary and an abuse of the court's discretion. Graves v. Atchison, T. & S. F. Ry. Co., 360 Mo. 167, 227 S.W.2d 660; Rose v. Thompson, 346 Mo. 395, 141 S.W.2d 824, 828.

Plaintiff's cause was submitted to the jury on both primary and humanitarian negligence. The assignments of primary negligence submitted in the conjunctive were as follows: (1) failure to drive as close to the right-hand side of the highway as practicable; (2) failure to keep a lookout ahead and laterally; (3) operating the automobile at an excessive and dangerous rate of speed under the existing circumstances; (4) failure to swerve the automobile to the right to avoid striking plaintiff; and (5) failure to sound a timely warning signal of the approach, proximity and movement of the automobile. The assignments of humanitarian negligence, also submitted in the conjunctive, were (1) failure to sound a timely warning and (2) failure to swerve to the right to avoid striking plaintiff.

 In order to determine the issues presented we shall review the evidence in a light most favorable to plaintiff and we shall disregard defendant's evidence unless it aids the plaintiff's case. Williamson v. St. Louis Public Service Co., 363 Mo. 508, 252 S.W.2d 295, 297; Wapelhorst v. Lindner, Mo. Sup., 269 S.W.2d 865, 870(6).

Plaintiff was struck and injured by defendant's automobile between 2:00 and 3:00 p. m., on August 20, 1955. It was a clear, hot, dry day. The collision occurred on Big Bend Boulevard near its intersection with Alicia Avenue. Big Bend is a paved highway, four lanes in width and, at the scene of the collision, is 40½ feet wide and extends north and south. The nearest intersection to the south on the east side of Big Bend was Bruno Avenue 256 feet south of Alicia Avenue.

On the day in question plaintiff and his brother Bobbie were with their parents, who had been shopping at a grocery store at the northwest corner of the intersection of Alicia and Big Bend. The Schmidt family automobile was parked on the east side of Big Bend, facing north and some 28 feet south of the north line of Alicia, which street did not extend east of Big Bend. There were no other automobiles parked on the east side of Big Bend north of the Schmidt automobile.

Plaintiff and his brother and their mother and father left the grocery store and started east across Big Bend to return to the family automobile. They started across more or less abreast, with the father on the south, then Bobbie, then the mother, then plaintiff. The father was carrying a box of groceries and the mother had hold of Bobbie with her right hand and plaintiff with her left hand. The family was crossing Big Bend at the intersection corner. There was also evidence that they were crossing "in front of the store" or "approximately 10 to 15 feet north" of the intersection of Alicia and Big Bend. About this time defendant was operating her automobile north on Big Bend in the west one of the two northbound lanes. Her automobile was east of the center line of Big Bend. There were no vehicles immediately in front of her and her view ahead was unobstructed. Plain-

tiff's father looked south and saw defendant's automobile approaching and about half way between him and Bruno Avenue, which avenue was approximately 256 feet south of Alicia. The southern stop sign on Bruno at its intersection with Big Bend was approximately 389½ feet south of the place where the Schmidt family were crossing Big Bend. When plaintiff's father saw defendant's automobile approaching, he came to a stop on the center line of Big Bend, and so did the other members of his family and all were standing abreast, with plaintiff on the north end of the line, as stated. When plaintiff's father first saw defendant's automobile, its left side was within a foot or two of the center line of Big Bend. Other evidence tended to show that, when defendant's automobile was 40 feet south "from these people," the left side of the automobile was "approximately six inches from the center line"; and that it did not change its course prior to the time that the left front bumper of the automobile struck the plaintiff (who had made one step forward) and threw him into the air. Plaintiff fell 30 feet further north, and just east of the center line of the street, and sustained severe injuries. Defendant's automobile came to a stop about 65 feet north of the point of collision. As stated, there was nothing to obstruct defendant's view as she drove north on Big Bend from the Bruno intersection to the point of collision. There was other evidence tending to show that the left side of defendant's automobile, as she approached the point of collision, was within "a foot or two", "approximately a foot or half a foot", "about three feet" from the center line. Considered favorably to plaintiff, the jury could find that defendant was driving with the left-hand side of her automobile within six inches of the center line of the highway as she approached and undertook to pass the four persons standing abreast at the center line of Big Bend. The automobile "came quite close to" plaintiff's father.

The evidence further tended to show that defendant was operating her automobile at a speed of 25 to 30 miles per hour; that she did not slacken speed or slow down prior to striking plaintiff; that she did not sound a warning or blow a horn or swerve her automobile prior to the impact; and that plaintiff was wholly oblivious of the approach of defendant's automobile. Plaintiff still had hold of his mother's hand or was holding to her dress, but had taken one step over the center line when he was struck by defendant's automobile. There seems to be no question but that plaintiff was over the center line, facing east, when the automobile struck him.

On the theory that they constituted admissions against interest, portions of defendant's deposition were read in evidence. Defendant had testified that she was operating her automobile at the time of the collision in question; that she did not know how close the left side of her car was to the center of Big Bend; that she did not "think" there were cars parked on the east side of Big Bend; that she did not blow her horn, did not swerve and did not apply her brakes, but continued in a straight course up to the moment of the impact; and that she first saw the child out of the left window of her automobile.

Defendant testified in her own behalf that, as she approached the place of collision, she saw the Schmidt family, "just as a group standing there * * * a group of people * * * they were standing near the line. * * * They were standing still." She didn't see any one east of the center line. She didn't know how far she was from the group when she first saw them or how close the left side of her automobile was to the center line of the street. She didn't blow any horn. She didn't apply her brakes, or slacken speed or swerve before the collision, but continued straight along.

 The applicable rules of law were well stated by this court in Wright v. Osborn, 356 Mo. 382, 201 S.W.2d 935, 937, as follows: "As Osborn was driving his automobile north along the clear unob-

structed highway and approaching the place of the accident he was under the duty imposed by law to exercise the highest degree of care (Kaley v. Huntley, 333 Mo. 771, 63 S.W.2d 21), and to keep a lookout in the direction the automobile was moving. To have failed to see what could have been seen by proper observation in the exercise of the highest degree of care would have been as much negligence as not to have looked at all. Kaley v. Huntley, supra; Miller v. Williams, Mo.Sup., 76 S.W.2d 355. Osborn's clear view down the higway ahead of him enabled him to see the shoulders of the highway as well as the concrete pavement itself. To see one was to see both. It was his duty to keep a vigilant lookout both ahead and laterally ahead (Hornbuckle v. McCarty, 295 Mo. 162, 173, 243 S.W. 327, 25 A.L.R. 1508; Brown v. Todebusch Transfer, Inc., 354 Mo. 611, 190 S.W.2d 239), so as to see anyone on the shoulders of the highway on each side, give timely warning, slacken speed, or turn aside upon the first appearance of danger. Miller v. Williams, supra." And see Scaggs v. Uetrecht, Mo.Sup., 244 S.W.2d 17, 19.

Did plaintiff make a case for the jury on the issues of humanitarian negligence, to wit, failure to warn and failure to swerve? On these issues reliance is put upon testimony tending to show that plaintiff "had been leading his mother across the street"; that the father had reached the center line and had stopped first; and that, as they stood in line, the mother "took Billy's hand and Bobbie's hand," but Billy was out a step or so further than his mother and he had made a step or a step and a half onto the east side of the center line, when he was struck. He had "a habit of sort of tugging," pulling his mother along. The mother testified: "By the time that I saw this car going north it was too late to almost do anything, and before I knew it Billy was up in the air like a football." The theory is that he was in a position of imminent peril, in the path of the automobile, as it approached.

"Under the humanitarian doctrine no duty to act was imposed on defendant until a situation of imminent peril came into existence." Yeaman v. Storms, 358 Mo. 774, 778, 217 S.W.2d 495, 498(1); Ukman v. Hoover Motor Express Co., Mo.Sup., 269 S.W.2d 35, 38; Welch v. McNeely, Mo.Sup., 269 S.W.2d 871(6,7).

One of plaintiff's witnesses said that plaintiff was standing still at the north side of his mother by the center line of the street when defendant's automobile was 40 to 50 feet south of the family group. The evidence most favorable to plaintiff on the issue as to when plaintiff came into imminent peril tended to show that, when plaintiff made the step across the center line of Big Bend and moved out beyond his father, mother and brother, the defendant's automobile was within three yards (9 feet) of where the Schmidt family was standing. At 30 miles per hour or 44 feet per second, and considering ¾ second as normal reaction time, it was too late to swerve or warn. There was no evidence tending to show that defendant saw or by the exercise of the highest degree of care could have seen plaintiff in a position of imminent peril, in the path of the automobile or about to enter its path, in time thereafter to have sounded a warning or to have swerved her automobile and avoided injuring plaintiff. Under the humanitarian doctrine, the defendant was only required to act upon reasonable appearances of certain danger or "imminent peril" and to take action, thereafter, to avoid injury. Turbett v. Thompson, 363 Mo. 577, 252 S.W.2d 319, 321; Ukman v. Hoover Motor Express Co., supra; Hayes v. Coca-Cola Bottling Co., Mo.Sup., 269 S.W.2d 639, 642. On this record no case was made for the jury under the humanitarian doctrine.

We now consider the issues of primary negligence which were submitted to the jury. The state statute, Section 304.-020(2) RSMo 1949, V.A.M.S., requiring that "all vehicles when in operation shall

658

be kept as close to the right-hand side of the highway as practicable", has been repealed. Laws 1953, p. 587, and see new sections 304.014–304.019, and sections 304.-021–304.026 RSMo 1949, Supp.1955, V.A.M.S. On the other issues of primary negligence it is only necessary for the purposes of this appeal to determine that a case was made for the jury on any one or more of the issues that were submitted. Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S.W.2d 91, 95(5).

Since plaintiff was a four year old child, no issue of contributory negligence is involved. Messer v. Gentry, 220 Mo.App. 1294, 290 S.W. 1014, 1016(7–9); Reynolds v. Kinyon, Mo.Sup., 222 S.W. 476, 479. Nor could the contributory negligence of the parents, if any, be imputed to the child. Reynolds v. Kinyon, supra.

The facts here are relatively very simple and are not in dispute, except as to how close the defendant's automobile was being operated to the center line of the highway. Considered favorably to plaintiff the evidence shows that a group of people, two adults and two children were stopped at the center line of the highway; that defendant operated her automobile by or passed them at 30 miles per hour, with its left side within six inches of the center line, without slackening speed, sounding a warning or swerving to the right; and that, as she did so, the fourth member of the party, a child four years of age, took one step forward, perhaps a foot or more over the center line and was struck by the left front bumper of the passing automobile. The question presented is whether reasonable minds might differ as to whether, in the exercise of the highest degree of care, the defendant should reasonably have anticipated that, in passing such a group of people as close as six inches, without warning or slackening speed, a member of the party on the far side, away from the approaching automobile, might be oblivious and, whether an adult or a small four year old child like plaintiff, might make one

step or so over the center line, or at least move more than six inches and into the path of the passing automobile and be struck and injured. In determining such issue it is wholly immaterial as to when plaintiff moved over the center line or whether he moved across the line only a fraction of a second before he was struck.

In determining negligence "all of the circumstances and the natural reactions and conduct to be expected of ordinary people in a given situation must be considered." Pitcher v. Schoch, 345 Mo. 1184, 139 S.W.2d 463, 467. The presence and movement of others on the highway must be anticipated. Goodwin v. Eugas, 290 Mo. 673, 236 S.W. 50, 53(4); Cool v. Peterson, 189 Mo.App. 717, 175 S.W. 244, 245; Cox v. Reynolds, Mo.App., 18 S.W.2d 575, 578.

In holding that a case was made for the jury, we do not hold that liability for negligence is predicated on hindsight, but rather upon foresight and it is immaterial whether defendant anticipated the very injury that occurred. If defendant, in the exercise of the highest degree of care, knew or should have known that it was not reasonably safe to pass, as she did pass in close proximity to the group of persons standing in the street, and that some injury was likely to result, it was her duty to guard against it. For the general applicable rules governing negligence see Guthrie v. City of St. Charles, supra, 347 Mo. 1175, 152 S.W.2d 91, 98; Zuber v. Clarkson Const. Co., 363 Mo. 352, 251 S.W.2d 52, 55; Hughes v. St. Louis Nat. League Baseball Club, 359 Mo. 993, 224 S.W.2d 989, 995, 16 A.L.R.2d 904; Stutte v. Brodtrick, Mo.Sup., 259 S.W.2d 820, 827.

"The driver of a motor vehicle is charged with notice that the pedestrian might vary slightly from his course or that he might be taken unawares by the discovery of the motor vehicle in close proximity to him and involuntarily place himself in front of the vehicle, and, accord-

ingly, in passing a pedestrian, must not drive so close that a slight deviation by the pedestrian would cause an accident, but must allow a sufficient margin of safety to allow for such deviations by the pedestrian." 60 C.J.S. Motor Vehicles § 387, page 944. And see 60 C.J.S. Motor Vehicles § 396, p. 963. It is immaterial here that the plaintiff was not in the direct path of the automobile until immediately prior to the collision; or that he may have voluntarily let go of his mother's skirt and stepped over the center line of the street into the path of defendant's automobile. Thoughtless and impulsive acts of children are to be expected and guarded against. Wood v. Claussen, Mo.App., 207 S.W.2d 802, 808(2); Cervillo v. Manhattan Oil Co., 226 Mo.App. 1090, 49 S.W.2d 183, 187.

Defendant saw the Schmidt family standing as a group at the center line of the highway, apparently waiting to proceed on across. Her view of the group was unobstructed, but it was apparent, or should have been apparent to her in the exercise of the highest degree of care, that all of the members of this group did not necessarily have an unobstructed view of her approaching automobile and that some might be oblivious of its approach and cross into the path of her automobile, whether they were children or adults. Since the Schmidt automobile was parked some twenty-eight or more feet south of where the Schmidt family was crossing Big Bend, there was nothing to prevent the defendant from swerving her automobile to the right after passing the parked automobile and before passing the Schmidt family. Defendant had time to slacken speed or sound a warning, and she had time and opportunity to swerve over and avoid driving so close to the group, but she proceeded straight ahead.

▆ We think the issues of negligence in the respects mentioned were for the jury. In holding that the issue of negligence was for the jury, if defendant drove her automobile past the mentioned group under the circumstances mentioned with its left side within six inches of the center line, it is not our intention to hold that a jury could not find negligent speed, negligent failure to sound a warning or negligent failure to swerve, if the left side of the automobile was at a greater distance than six inches from the center line as was shown by other witnesses for plaintiff. The court did not err in refusing to direct a verdict for defendant as requested at the close of all the evidence. Scaggs v. Uetrecht, supra; Messer v. Gentry, supra; Koelling v. Union Fuel & Ice Co., Mo.App., 267 S.W. 34, 37; Haake v. Davis, 166 Mo. App. 249, 255, 148 S.W. 450; McKinney v. Bissel, Mo.App., 263 S.W. 533, 535(5).

Having held that plaintiff made a case for the jury, we now reach the question as to whether the trial court erred in granting plaintiff a new trial on the ground that the verdict was against the weight of the evidence.

▆ "The trial court is vested with an inherent and broad discretion in granting one new trial upon the ground the verdict and judgment are against the weight of the evidence. Albert J. Hoppe, Inc. v. St. Louis Public Service Co., Mo.Sup., 235 S.W.2d 347, 349 * * * Section 510.330 RSMo 1949, V.A.M.S. And its ruling upon that ground will not be disturbed, except in case of manifest abuse. Dye v. St. Louis-San Francisco Ry. Co., 361 Mo. 331, 234 S.W.2d 532, 534. * * * The rule is sometimes expressed by saying 'that the granting of a new trial by the trial court will not be interfered with on appeal where there is substantial evidence to sustain the trial court's view, or, putting it another way, when there is substantial evidence to support a verdict for the party to whom a new trial is granted.' Walsh v. Southwestern Bell Tel. Co., 331 Mo. 118, 131, 52 S.W.2d 839, 845." Dawson v. Scherff, Mo.Sup., 281 S.W.2d 825, 831. The trial court did not err in granting a new trial on the discretionary ground stated. No abuse of the court's discretion appears. Lindsey v. Vance, 337 Mo. 1111, 88 S.W.2d 150.

Appellant does not contend that Instruction No. 3, given by the court at defendant's request was not erroneous, as the trial court held. Appellant only states: "It is immaterial under the circumstances whether the Court was correct or not in holding that defendant's Instruction Three was not a proper declaration of the law because plaintiff was not entitled to go to the jury and the verdict should be reinstated."

Since we have held that plaintiff's motion for a new trial was properly sustained on a discretionary ground, we need not pass upon the correctness of Instruction No. 3.

The order granting a new trial to plaintiff is affirmed.

All concur.