STATE OF MISSOURI at the Relation of HAUCK BAKERY COMPANY, Relator, v. GEORGE F. HAID, WILLIAM DEE BECKER and SIMON G. NIPPER, Judges of the St. Louis Court of Appeals.—62 S. W. (2d) 400.

Division Two, June 24, 1933.*

*NOTE: Opinion filed at October Term, 1932, April 20, 1933; motion for rehearing filed; motion overruled at May Term, June 24, 1933.

*Fred H. Blades, George F. Wise, Holland, Lashly & Lashly* and *Donnell & McDonald* for relator.

*Everett J. Hullverson* and *Allen, Moser & Marsalek* for respondents.

COOLEY, C.—Original proceeding in certiorari whereby, because of alleged conflict with decisions of this court, relator seeks to have quashed the opinion and record of the St. Louis Court of Appeals in a certain cause appealed to that court from the Circuit Court of the City of St. Louis, wherein Nat Cunningham was plaintiff and relator, Hauck Bakery Company, and Arthur and Louis Franke were defendants. The action was for personal injuries sustained by Cunningham and claimed by him to have resulted from a collision between relator's truck and one owned by the Frankes. Cunningham obtained judgment against all the defendants, from which this relator appealed. The Court of Appeals affirmed the judgment. The facts and conclusions of law involved in the question of alleged conflict are thus stated by respondent judges in their opinion:

"Pending the appeal, Nat Cunningham died, and his administratrix has been substituted as respondent. The accident happened in the City of St. Louis, at the intersection of Kraus street and Broadway. Broadway runs north and south, and is occupied in the center by two street car tracks. Kraus street runs east and west, and is about thirty-two feet wide. The accident occurred about 11 o'clock in the morning. The day was very wet and rainy.

"Plaintiff testified that he came to the scene of the accident on a southbound Broadway street car, alighting at the northwest corner of the intersection. When he got off the car he saw a manure truck

driven by the Frankes coming southwardly on Broadway. He looked toward the south and saw the truck of the Hauck Bakery Company. He walked toward the northeast corner of the intersection, and about the time he reached the east curb he saw the Hauck Bakery Company truck again, and it was at that time about a half block away, and, according to his testimony, coming at a rate of speed of forty or forty-five miles an hour. Plaintiff then jumped upon the sidewalk. He was carrying a bundle. He got upon the sidewalk and started to set his bundle down when he was struck by the Hauck Bakery Company truck. There was a collision between the Franke truck and the other truck. The Hauck Bakery truck was knocked onto the sidewalk by the Franke truck, and struck and injured plaintiff. Plaintiff in describing the accident referred to a chart or diagram, and it was very difficult to understand from his testimony the details of the accident. It does appear, however, that the Franke truck was coming south on Broadway and on the street car tracks. The street being very slick and slippery, the Franke truck started slipping and sliding before it reached the street intersection, and slid over against the east side of Broadway and struck the Hauck Bakery truck, and knocked it upon the sidewalk, where it struck plaintiff and injured him.

"The driver of appellant's truck testified that he was driving the same northwardly on the east side of Broadway. He was going about eighteen or twenty miles an hour when he approached the intersection of Broadway and Kraus street. He saw the Franke truck then about a half block away. He then proceeded on across Kraus street. When he had got about half-way he noticed the Franke truck skidding and slipping over the street. He pulled toward the east curb of Broadway and slowed down, and had nearly come to a stop when the Franke truck struck him. The Franke truck struck the bakery truck about opposite the driver's seat, and pushed or shoved it upon the sidewalk. This driver of the Hauck Bakery truck stated that he was about twenty feet south of the south curb line of Kraus street when he first saw the Franke truck, and saw it skidding as he pulled into Kraus street. When he first saw the Franke truck skidding he was going about eighteen miles an hour, according to his testimony, and could have stopped his truck in about twenty-five or thirty feet. He knew the street was very slippery at the time. He had skid chains in the truck, but had not put them on the wheels. When he saw the Franke truck skidding, he said, he was too far into Kraus street to turn to the right. He applied the brakes, and his truck had nearly stopped, when it was struck by the Franke truck.

"There is the testimony of other witnesses who were driving behind the Franke truck that it began skidding about half a block from where the injury happened.

"On the part of plaintiff, the Court gave instruction No. 1, which told the jury, in substance, that if the driver of the Hauck Bakery Company truck drove it into said intersection at a rate of speed that was excessive and dangerous, under the circumstances, and which was not reasonably safe and was liable to cause a collision, and that in so doing the defendant Hauck Bakery Company was negligent, and that such negligence concurred with the negligence of the operator of the Franke truck, if the jury found that the operator of the Franke truck was negligent, and that as a direct result of the concurring negligence of both defendants, if the jury found both were negligent, a collision was caused to occur, and plaintiff was injured, then plaintiff was entitled to a verdict.

"Appellant insists that the Court should have given its instruction in the nature of a demurrer to the evidence, because there was no evidence of any excessive speed on the part of appellant's truck which contributed to plaintiff's injury, and that the alleged speed of the truck was not the proximate cause of such injury, and therefore the Court erred in giving plaintiff's instruction No. 1.

"We do not think that the Court erred in failing and refusing to give defendant's instruction in the nature of a demurrer to the evidence. The argument of appellant is (and it will be noted that the Hauck Bakery Company is the only defendant in this case who appealed) that, even though the driver of the Hauck Bakery truck was driving at an excessive rate of speed, there is no evidence that the excessive speed contributed in any way to plaintiff's injuries. It is sought to sustain this argument by advancing the further thought (1) that there is no evidence that appellant continued at the rate of forty miles per hour up to the point of collision, and (2) that, even if it be assumed that it was traveling at an excessive rate of speed, still there is no evidence that the alleged excessive rate of speed contributed in any way to plaintiff's injuries. We are unable to concur in this view of appellant. The evidence shows conclusively that the streets were very wet and slippery at that time. Plaintiff's evidence shows that the appellant's truck was being driven at a rate of speed of forty or forty-five miles an hour within a half block of the point of the collision. Appellant's driver testified that he was only going at about eighteen or twenty miles an hour when he entered the intersection, and that he could not have stopped under twenty-five or thirty feet. At this time he observed the Franke truck approaching from the north, sliding and zigzagging over the wet street almost a half a block away. We think, under those circumstances, that the jury may have found, and rightfully so, that if appellant's truck had not been operated at an excessive rate of speed, under the circumstances and conditions existing at the time, it could have been stopped in time to have avoided the collision, which might rea-

sonably have been anticipated from the circumstances existing at the time and place in question.

"The complaint which appellant makes of instruction No. 1, given on behalf of plaintiff, is based upon the same theory, and for the reasons above stated both these assignments ought to be overruled."

Relator claims that respondents' opinion is in conflict with prior decisions of this court in "deciding either (1) that the alleged excessive speed of relator's truck was the proximate cause of plaintiff's injuries, or (2) that the relator was liable for alleged negligence regardless of whether it was the proximate cause of plaintiff's injuries." The prior decisions of this court with which, in particular, relator claims respondents' opinion conflicts are Borack v. Mosler Safe Co., 288 Mo. 83, 231 S. W. 623; Wood v. Wells, 270 S. W. 332, and De-Moss v. Kansas City Rys. Co., 296 Mo. 526, 246 S. W. 566.

In view of some of the arguments advanced by relator it may not be amiss to state again that in proceedings of this character we are concerned only with the question of conflict. In such proceedings this court exercises superintending control over the Courts of Appeals for the purpose of maintaining uniformity in the law as announced by those courts with the decisions of this court. [State ex rel. Vesper-Buick Automobile Co. v. Daues, 323 Mo. 388, 19 S. W. (2d) 700; State ex rel. N. W. Natl. Ins. Co. v. Trimble, 323 Mo. 458, 20 S. W. (2d) 46.] We would not be authorized to quash the opinion of a Court of Appeals because, perchance, we might think such court had not correctly decided the case. [State ex rel. Amer. Packing Co. v. Reynolds, 287 Mo. 697, 230 S. W. 642; State ex rel. Weisheyer v. Haid (Mo.), 26 S. W. (2d) 939.] Nor is it our province to determine on certiorari whether or not such court has erred in its application of rules of law to the facts stated in its opinion. [State ex rel. Continental Ins. Co. v. Reynolds, 290 Mo. 362, 235 S. W. 88; State ex rel. Continental Life Ins. Co. v. Allen, 303 Mo. 608, 618, 262 S. W. 43; State ex rel. St. L.-S. F. Ry. Co. v. Haid, 327 Mo. 217, 37 S. W. (2d) 437, and cases cited.] As stated in State ex rel. City of St. Charles v. Haid, 325 Mo. 107, 118, 28 S. W. (2d) 102:

"Our authority to supervise the findings of fact and conclusions of law of a Court of Appeals is limited to 'those cases wherein it clearly appears that the Court of Appeals has announced some general principle of law contrary to the last previous announcement of this court upon the subject, or, on a given state of facts, such Court of Appeals has announced and applied a conclusion of law or equity contrary to a conclusion announced and applied by this court upon the same, or a similar state of facts.' [State ex rel. v. Daues et al., 323 Mo. 388, 19 S. W. (2d) 700, 703, and cases cited.]"

In State ex rel. Lusk v. Ellison, 271 Mo. 463, 196 S. W. 1088, and State ex rel. Boeving v. Cox, 310 Mo. 367, 276 S. W. 869, cited

by relator, the court did not mean to announce a different rule as applicable on certiorari in negligence cases from that followed in other classes of cases. The rules hereinabove stated have been applied on certiorari in numerous negligence cases and are well settled. In State ex rel. City of St. Charles v. Haid, supra, the question of proximate cause in a negligence case was involved. We proceed therefore to examine the question of alleged conflict in the light of the principles above stated. We take the facts as stated in respondents' opinion. This rule, also, is well settled.

Respondents did not hold that relator was liable regardless of whether or not its alleged negligence was the proximate cause of plaintiff's injuries. They held that plaintiff made a submissible case on the question of whether or not the concurring negligence of the drivers of both trucks caused the collision and thereby injured the plaintiff.

In order to make one liable for negligent injury it is not necessary that his negligence should have been the sole proximate cause of the injury complained of. If his negligence combines with that of another to cause the injury he is liable, although his negligence alone would not have produced the injury. [Harrison v. Kansas City Electric Light Co., 195 Mo. 606, 93 S. W. 951; State ex rel. City of St. Charles v. Haid, supra, 325 Mo. 1. c. 118, 28 S. W. (2d) 1. c. 102, and cases cited.]

Neither does respondents' opinion proceed upon the theory that relator's alleged negligence was a contributing cause of the collision and the consequent injury to plaintiff simply because the speed at which its truck was being driven brought said truck to the place where it was struck by the Franke truck at the moment the Franke truck reached that point. It holds that a submissible case was made on the theory that the alleged excessive speed of relator's truck make it impossible for the driver to stop when he discovered the danger of a collision, whereas had he been driving at a proper speed he could have stopped and thus have prevented the collision.

From the facts as stated in respondents' opinion it appears that the Franke truck, coming south on Broadway, was obviously out of control from time it was a half-block north of the point of collision and that when relator's driver entered the street intersection he observed the Franke truck approaching from the north, "sliding and zigzagging over the wet street almost half a block away." Evidently realizing the danger of a collision he applied his brakes but could not stop in time to avert it. He said he was then driving eighteen or twenty miles an hour. But there was evidence that when he was a half-block south of the point of collision he was driving at forty or forty-five miles an hour, and plaintiff testified

that when he saw relator's truck about a half-block south of him, coming at that rate of speed, he, plaintiff, had reached the east curb of Broadway and that he "jumped" upon the sidewalk and "started to set his bundle down," when he was struck, which would indicate that relator's truck consumed a very short time in traversing that half-block of distance. The driver said that when he saw the Franke truck skidding he was too far into Kraus Street to turn to the right. Respondents state that he also said he first saw the Franke truck when he was about twenty feet south of the south curb line of Kraus Street and saw it skidding as he pulled into Kraus Street. Respondents further state that said driver observed the Franke truck sliding and zigzagging half a block away "when he entered the intersection." His speed may have had something to do with his belief that he could not turn to the right on the slippery pavement and the jury may have believed that he underestimated his speed. Relator's driver knew the slippery condition of the streets and that he did not have skid chains on his truck. The law places upon operators of motor vehicles the duty to use a high degree of care. The plaintiff was entitled as against the demurrer to the benefit of all evidence favorable to him together with all inferences in his favor that might reasonably be drawn therefrom. And even though the speed of relator's truck as it entered the street intersection may have been only eighteen or twenty miles an hour, as testified by its driver, it is to be remembered that when, as here, violation of statutory or ordinance speed limit is not relied on and the question of excessive speed is to be determined by common law principles, whether or not the speed of a motor vehicle is negligent is to be determined in view of the existing circumstances and conditions and the exigencies of the situation and is usually a question for the jury. What would be due care in one situation might be negligence in another. [See Woods v. K. C. Light & Power Co. (Mo. App.), 212 S. W. 899, 902; Engleman v. Met. St. Ry. Co., 133 Mo. App. 514, 520, 113 S. W. 700; Bongner v. Ziegenhein, 165 Mo. App. 328, 147 S. W. 182; Haake v. Davis, 166 Mo. App. 249, 148 S. W. 450; Ginter v. O'Donohue (Mo. App.), 179 S. W. 732, 734.]

Respondents held that the jury may rightfully have found that if relator's truck "had not been operated at an excessive rate of speed, under the circumstances and conditions existing at the time, it could have been stopped in time to have avoided the collision, which might reasonably have been anticipated from the circumstances existing at the time and place in question." Does their holding contravene any prior decision of this court on similar facts? It cannot be contended that they announced a general principle of law contrary to the last previous announcement of this court on the subject. As pointed out above, they did not hold that it was unneces-

sary for the plaintiff to show that relator's alleged negligence was a proximate cause of plaintiff's injury.

In Borack v. Mosler Safe Co., supra, the defendant's driver, in turning a team of horses to the left into an intersecting street failed to go to the right of and beyond the center of the intersection before turning, as required by ordinance. In making the turn one of the horses slipped and fell and the wagon tongue struck and injured the plaintiff's husband. He died from the injury. It was held that the violation of the ordinance was not the proximate cause of the injury. The court said there was no evidence of negligent handling of the team by the driver; that from the evidence it appeared there was no way to prevent horses from slipping and falling on wooden block pavement; that turning to the left of the center of the intersection had no tendency to increase the likelihood of a horse slipping and falling; and that the occurrence was a mere accident *not reasonably to have been foreseen* as a result of the alleged violation of the ordinance. The court further said in substance by way of illustration that had defendant's team, by reason of the violation of the ordinance, collided with a vehicle the possible presence of which the driver should have anticipated, and as a result of the collision defendant's horse had been knocked down, causing injury to the deceased, "the result could be said to have been one the driver of defendant's team could reasonably have anticipated and naturally resulted from his violation of the ordinance."

In Wood v. Wells, supra, the occupants of an automobile, approaching a street car track at a speed of thirty-five miles per hour, over an icy pavement, discovered the approach of the defendant's street car, coming at the same speed, when each was about seventy-five feet from the point of collision. The driver of the automobile attempted to stop and would have succeeded before reaching the track but for the slippery condition of the street. Negligence in the speed at which the street car was operated was charged. The court held that "if defendant was guilty of negligence in running the street car too fast, the plaintiff was guilty of the same kind of negligence in permitting the automobile to travel at the same rate of speed, and hence there can be no recovery herein." But .it also held that the alleged negligent speed of the street car was not a proximate cause of the injury; that the ice and sleet and the consequent inability of the driver of the automobile to stop it constituted an independent, intervening cause and should be held to have been the proximate cause of the plaintiff's injury, quoting 1 White's Personal Injuries on Railroads, as follows:

"When a new, independent cause, not under the control of the alleged wrongdoer, intervenes between the alleged wrongful act and the injury, if such intervening cause is not a consequence of the

original wrongful act and could not have been foreseen by the exercise of ordinary care, and but for such intervening cause the injury to the plaintiff would not have resulted, then the intervening cause will be taken to be the proximate cause of the injury and no recovery can be had from the party who is not responsible for such independent cause.''

From the above quotation and another from DeMoss v. Kansas City Rys. Co., supra, as well as from its discussion of the facts, it appears that in the Wood case the court meant that under the facts of that case the defendant's motorman had no reason to anticipate that the automobile driver would not be able to control his machine or would not stop it before it reached the track. Moreover, it was not contended in that case that the alleged excessive speed of the street car prevented the motorman from stopping it in time to prevent the collision when he discovered there was danger of a collision. The case did not proceed upon that theory but rather upon the theory that the alleged excessive speed of the street car happened to bring it to the spot where the collision occurred at the moment the automobile got there. The court prefaced its discussion of the question of excessive speed as proximate cause by the statement: ''It is argued that if the street car had been running slower the automobile could have crossed the track in safety.'' The court pointed out that the same argument would apply if either the car or the automobile had been running faster or slower than it was at the time, and then proceeded to discuss the question of proximate cause as above indicated.

In the DeMoss case the plaintiff was a passenger in an eastbound automobile which ran against the west side of a northbound street car as the latter started up and was turning westward in a street intersection after having stopped at the south side of the intersection. Negligence on the part of the defendant street railway company was predicated upon the failure of its motorman to sound his gong and look to the west before starting the car. The automobile was going nine or ten miles an hour when the street car started forward across its course. The driver of the automobile saw the car start and immediately applied his brakes and would have stopped before striking the car had not his automobile skidded on the wet pavement. In holding that the skidding of the automobile and not the alleged negligence of the motorman was the proximate cause of the injury the court said that had the motorman looked west when he started his car he would have seen an automobile approaching at such a distance and speed that it could reasonably be expected to be stopped or turned (to its right so as to pass behind the car) before reaching the car; that he had no means of knowing that the driver of the automobile had neglected to put on his chains and could not

have anticipated that the automobile was liable not to respond to its brakes; that he had the right to assume that the automobile driver would use ordinary care and that "if he had sounded the gong and had looked to the west before starting his car, and had seen the automobile approaching, he would have been guilty of no negligence, under the circumstances, in starting his car and assuming that the automobile would be seasonably brought to a stop or turned aside."

In the instant case there was evidence that the Franke truck was skidding and apparently out of control from the time it was half a block north of the point of collision. Relator's driver testified that he saw it when he was about twenty feet south of the south curb of Kraus Street and observed it skidding "as he pulled into Kraus street." Also, he knew the slippery condition of the streets and the effect that would have on his ability to control his own truck.

In its facts and the issues involved we think this case more nearly analogous to Hogan v. Fleming, 317 Mo. 524, 297 S. W. 404, than to the above cases with which it is said to conflict. In the Hogan case the plaintiff was riding in a police patrol automobile southward on Grand Avenue toward Tenth Street in Kansas City. There were two street car tracks in Grand Avenue and the automobile was running astride the west rail of the west or southbound track. At the Tenth Street intersection there were two platforms above the street level, one on each side of and adjacent to the tracks, for the use of passengers in boarding and alighting from cars. When the automobile neared the west loading platform a pedestrian stepped from that platform and started to walk eastward across the path of the approaching automobile. To avoid striking him the chauffeur, not having time to stop, swerved to the east and collided with a northbound street car approaching on the east track and plaintiff was injured. Had the automobile continued southward astride the west rail of the west track as it would have done but for swerving to avoid striking the pedestrian it would have passed the street car safely. The plaintiff recovered against the receivers of the street car company on the ground that the motorman was negligent in not stopping the car upon the approach of the police patrol. It was argued that defendant's demurrer to the evidence should have been sustained on the ground that the motorman's negligence was not the proximate cause of the injury. This court held that the demurrer had been properly overruled. It stated, as has been often held, that while the question of proximate cause may sometimes be one of law for the court, it is ordinarily one of fact for the determination of the jury. The court quoted from 1 Shearman and Redfield on the Law of Negligence (6 Ed.), page 66, section 32, that:

"The connection between the defendant's negligence and the plaintiff's injury may be broken by an intervening cause. . . . But the

connection is not actually broken, if the intervening event is one which might, in the natural and ordinary course of things, be anticipated as not entirely improbable, and the defendant's negligence is an essential link in the chain of causation.''

The court stated that it could not say that the act of the pedestrian in stepping into the path of the approaching police patrol was such a happening as could not have been reasonably foreseen by the motorman. Pertinent here, the court further correctly said:

''It is not essential that defendants' motorman could have foreseen the very injury which resulted, or that he could have anticipated the exact manner in which the injury did occur, but it is sufficient if the negligence of defendant's motorman was a proximate cause of the injury.'' Citing cases.

The Borack, Wood and DeMoss cases are noticed in the Hogan case and held inapplicable to the facts and circumstances in the latter case.

Relator here argues that its truck had nearly come to a stop when the Franke truck struck it and was in much the same situation as a parked car; that the Franke truck was then moving practically *eastward* toward the curb and sidewalk and but for striking relator's truck would have gone on across the walk and struck plaintiff, wherefore ''the fact that relator's truck was in the position in which it was did not in any way enhance the danger to persons on the sidewalk,'' and was not the proximate cause of plaintiff's injury.

It is clear from respondents' statement that the testimony that relator's truck ''had nearly come to a stop when the Franke truck struck him'' was that of relator's driver and witness, and of course was not conclusive against the plaintiff. It does not appear from respondents' statement that there was not a southward as well as an eastward movement of the Franke truck as the two trucks collided. It would be mere speculation to attempt to say, on the facts here presented, that plaintiff would have been struck by the Franke truck had not relator's truck stopped it. Certainly the court could not so say as a matter of law in ruling a demurrer to the evidence. From the facts as stated in respondents' opinion the jury may well have found that plaintiff's injury was a direct result of the collision but for which he would not have been hurt.

We have not overlooked other cases referred to in relator's brief but deem it unnecessary to review them. We find no conflict between respondents' opinion and any of the decisions of this court called to our attention. We are of the opinion that our writ herein should be quashed. It is so ordered. *Westhues* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion by Cooley, C., is adopted as the opinion of the court. All concur; *Leedy, J.,* not sitting.