GEORGE J. FELBER v. UNION ELECTRIC LIGHT & POWER COMPANY, a Corporation, and ROBERT VAN LEUVEN, Appellants, and ARTHUR W. SANER, Defendant.—100 S. W. (2d) 494.

Division Two, December 23, 1936.

202

*Theodore Rassieur, Thomas Bond* and *David H. Robertson* for appellants.

*Gallant & Hannigan* and *Robert L. Aronson* for respondent.

WESTHUES, C.—This comes to the writer on reassignment. Respondent, plaintiff below, sued Union Electric Light & Power Company, a corporation, Robert Van Leuven and Arthur M. Saner to recover damages for personal injuries alleged to have been sustained through the negligence of defendants. Upon a trial respondent obtained a favorable verdict in the sum of $20,000 against the Union Electric Company and Van Leuven. The jury found the issues in favor of the other defendant, Saner. The trial court ordered a *remittitur* of $5000, to which respondent consented, and judgment was entered for $15,000. From this judgment the Union Electric and Van Leuven appealed.

Respondent's injuries were sustained as the result of a collision between a small Ford truck belonging to the Union Electric, and driven by Van Leuven, and a car owned and driven by Saner. The collision occurred about five P. M. on the 22nd day of April, 1931, at the intersection of Twelfth and Hickory streets in St. Louis, Missouri. Twelfth

Street is a main thoroughfare running north and south. Immediately north of Hickory Street, Twelfth Street runs a little to the northwest. South of Hickory Street it runs due south so that there is a bend in Twelfth Street at Hickory Street. Twelfth Street, at the time, was about fifty-five feet wide south of Hickory Street, and seventy feet wide north of Hickory Street. Hickory Street was thirty feet in width from curb to curb and crossed Twelfth Street in a somewhat northeasterly and southwesterly direction. At the time of the collision respondent was crossing Hickory Street from north to south in the pedestrian walk on the west side of Twelfth Street. Van Leuven, driving a Union Electric car, had proceeded north on Twelfth Street and had completed a left-hand turn, intending to go west on Hickory Street. About the time he was entering Hickory Street and leaving Twelfth Street, a car driven by defendant Saner, traveling south on Twelfth Street, struck the Union Electric car near the rear end, causing it to turn completely around as if on a pivot. As it swung south and west it struck plaintiff and seriously injured him.

The charges of negligence against appellants, stated in respondent's petition, were: (1) Failure to sound a warning of the approach and movement of the truck; (2) excessive speed; (3) violation of a city ordinance, which was pleaded as follows: "Three. There was in full force and at all times herein mentioned, an ordinance in the City of St. Louis, being Section 2425 of the Revised Code of St. Louis, 1926, which provides as follows, to-wit:

"'Signal for Left Turn.

"'An operator or driver approaching an intersection of a street with the intention of turning thereat, or with the intention of turning around in the street where the same is permitted, shall, in turning to the left, extend his arm at an angle below horizontal so that the same may be seen in the rear of his vehicle and shall slow down and approach the intersecting street so that the left side of his vehicle shall be as near as practicable to the center line of the street along which he is proceeding, but shall run beyond the center of such intersection, passing to the right thereof, before turning such vehicle to the left.'

"The defendant Union Electric Light & Power Company and Robert Van Leuven, carelessly and negligently failed to give any arm signal of their intention of turning said automobile and the defendant Union Electric Light & Power Company and Robert Van Leuven carelessly and negligently failed to slow down and approach the intersection of Twelfth and Hickory streets so that the left side of such vehicle was as near as practicable to the center line of Twelfth Street and failed to run beyond the center of said intersection, passing to the right thereof before turning such vehicle to the left;" and (4) that appellant carelessly and negligently ran into, struck and collided with the automobile of the defendant, Arthur M. Saner. Both appellants filed a general denial.

Appellants have briefed their assignments of error under twenty-three main topics and a number of subtopics. A disposition of a number of points will necessarily dispose of others. For example, appellants contend that the court erred in admitting evidence tending to prove that Van Leuven failed to sound a warning. Under another topic the point is made that Van Leuven's failure to sound a warning was not the proximate cause of the collision. Again appellants assert, under another topic, that the trial court erred in not giving their requested instruction withdrawing from the jury's consideration a charge of negligence of failure to sound a warning. Such questions will be treated in this opinion under a single topic.

 Appellants devoted considerable space in their brief contending that the verdict and judgment in favor of the codefendant, Saner, cannot be considered as conclusive of any fact or issue involved in this action between respondent and the appellants. Many authorities are cited in support of this contention. It is elementary law that a plaintiff, as in this case, suing for damages for personal injuries resulting from negligence, must, before he is entitled to a judgment, produce evidence that the defendant against whom he seeks a judgment was guilty of negligence and that such negligence directly contributed to the injuries for which damages are sought. We will treat the case as though Saner had not been made a defendant. Appellants also correctly state that "respondent could not recover upon any negligence not pleaded by him." It is also urged in appellants' brief that all the evidence in the case, inconsistent with the physical facts, should be disregarded. We will attempt to abide by that rule. Appellants also insist that the evidence conclusively showed plaintiff was struck by the Union Electric truck, or car, when it was forced southward by the impact of the collision. In their brief appellants say:

"The force of the collision caused Van Leuven's car to pivot on his front wheels to the left in a circle and strike Felber with its rear end and injuring him."

We think the evidence justifies that statement. Appellants insist that the various charges of negligence were not substantiated by evidence, or, if proven, that they were not the proximate cause of plaintiff's injuries.

In discussing these questions it must be remembered that it was not necessary to render appellants liable, that the negligence of Van Leuven was the sole proximate cause of the injury. If the concurrent negligence of two persons causes injuries to a third, both are liable. [State ex rel. v. Haid, 333 Mo. 76, 62 S. W. (2d) 400, 1. c. 402 (4).]

 It is conceded, by appellants, that Van Leuven did not give any warning signal. It is asserted, however, that:

"Van Leuven's failure to sound a horn or give any warning of his approach was not the proximate cause of the collision and Felber's consequent injury.

"(1) Felber was not in danger of being run down and needed no warning.

"(2) Saner saw Van Leuven's car at all times, so that no warning was necessary."

As to the second proposition appellants may be correct, but we cannot say, as a matter of law, that Felber was not in danger of being run down by appellants' car. Felber was walking across Hickory Street where Van Leuven attempted to drive his car. Felber had not yet crossed the street when he was struck by the side movement of Van Leuven's car. Felber had, therefore, cleared the path of Van Leuven's car by only a few feet. Saner testified as follows: "Q. Now then, what occurred? A. Well, as I got near the corner of Twelfth, or at the corner of Twelfth and Hickory Street, this car that was going north abruptly or suddenly made a left turn and I applied my brakes, and turned to the left to avoid striking him. I saw that the man that was driving his car had slowed up perceptibly and kind of turned to the left or rather to the right. Q. Now, when did he slow up and turn to the right? A. Well, when his car was just about approaching the crossing on Hickory Street going from the north to the south side. Q. On the pedestrian's crossing, you mean? A. Yes. Q. That is when it slowed up suddenly? A. Yes."

The evidence justified the conclusion that Van Leuven checked the speed of his car to permit the plaintiff to pass out of the pathway of the car, and because he checked his speed, was struck by Saner's car. The facts justified the court in submitting the case to the jury on this charge of negligence, because a jury could justly find that had Van Leuven sounded his horn in time the plaintiff may have stopped and permitted the car to pass in front of him, or plaintiff may have accelerated his speed and passed ahead of the car so that it would not have been necessary for Van Leuven to slow down, and thus have avoided the collision. A second or less would have been sufficient for Van Leuven's car to have cleared the pathway of Saner's car. We are therefore of the opinion that the evidence was sufficient to submit the question of whether Van Leuven failed to exercise the highest degree of care in not sounding his horn as a warning to plaintiff of the close proximity of the car.

We are of the opinion that the evidence not only failed to sustain the charge of negligence of excessive speed, but showed the contrary. There was evidence in the record that Van Leuven was driving at a rate of speed of about twenty-five or thirty miles per hour prior to the time he reached the intersection, but the evidence showed that he slowed down at the intersection and was driving only about ten or twelve miles per hour. He had his car under control. He testified he could have stopped within two or three feet at any time after he reached the intersection. There was no evidence to the contrary. The case of State ex rel. v. Haid, supra, cited by re-

spondent, does not support his contention. In fact, the evidence showed that Van Leuven's car was struck because he slowed up perceptively. Dr. Saner so testified. Excessive speed on the part of Van Leuven, prior to the time he reached the intersection, had nothing to do with the collision. Appellants' Instruction No. 3, withdrawing this assignment of negligence from the jury should have been given. [Shelton v. Rudd, 242 S. W. 151, l. c. 152, 153, (3) and cases there cited.] The refusal of this instruction was error and appellant duly preserved this ruling for our review.

We must also rule that the charge of negligence, that Van Leuven failed to drive as near as practicable to the center line of Twelfth Street, prior to making a left-hand turn, should have been withdrawn from the jury. The evidence showed he followed the car tracks up to the point where he made the left-hand turn. Whether or not that was the proper place for Van Leuven to drive had no connection with the collision. Appellants' instruction withdrawing this charge should have been given. [Krelitz v. Calcaterra, 33 S. W. (2d) 909, l. c. 911 (2-3).]

Respondent charged a violation of a city ordinance in that Van Leuven failed to give any arm signal of his intention of making a left-hand turn. The evidence disclosed that there was at the time, no traffic moving north to the rear of Van Leuven. The evidence also showed that Van Leuven did not give an arm signal. In Phillips v. Henson, 326 Mo. 282, l. c. 286-7-8, 30 S. W. (2d) 1065, this court, in speaking of a similar situation, said:

"The language of the statute indicates that the signal of intention to turn a motor vehicle to the right or left was intended as a warning to persons approaching from the rear. No doubt it would have been wise to have required a signal or warning to persons approaching from the opposite direction, but as the Legislature did not see fit to do so, we have no authority to incorporate such a provision into the statute by construction. As the statute does not require the driver of a motor vehicle, on approaching intersecting streets, to warn persons approaching the same intersection from the opposite direction, of his intention to turn his vehicle to the right or left, failure to give a warning under such circumstances would not be negligence *per se.*"

On this point plaintiff's petition charged only a violation of the ordinance and not common-law negligence. The ordinance was introduced in evidence and read to the jury. The only instruction requested by plaintiff was one on the measure of damages. The case was, therefore, submitted to the jury on the theory that defendant violated the city ordinance in this respect and therefore was guilty of negligence. This was plaintiff's theory at the trial. The above quotation from Phillips v. Henson is applicable to this case and

further discussion is unnecessary. Appellants' instruction withdrawing this assignment of negligence should have been given.

Appellants also charged that Van Leuven did not violate that portion of the ordinance requiring a turn to be made to the right of the center of the intersection of Hickory and Twelfth streets. Since Twelfth Street and Hickory do not meet at right angles, as above stated, the mathematical center, as appellants argue, would be the point of meeting of the center lines of Hickory and Twelfth streets drawn parallel with the direction of the streets. It is obvious that it would be impracticable to require traffic going north to go to the right of the so-called mathematical center in making a left-hand turn. Ordinances of this nature are not to be construed so as to be absurd. [Stack v. General Baking Company, 223 S. W. l. c. 93-94, 283 Mo. 396.] In this case there was evidence, which we need not detail because the case must be reversed for a new trial, that Van Leuven did not go to the center of the intersection, even if we consider the center as being where appellants contend. Evidence was introduced that Van Leuven cut the corner and was within five or six feet of the south curb line of Hickory Street when struck by Saner's car. There was evidence, therefore, to support this charge of negligence. We may add that we believe appellants' contention, as to what point should be considered the center, is correct, when the ordinance is given a practical construction. In the interest of justice, an instruction on this point should be given for the guidance of the jury.

As above indicated, respondent did not request the trial court to give any instruction defining the issues of the case. Appellants' instructions were refused, except one on the burden of proof and another defining the terms "ordinary care" and "highest degree of care." So the case was submitted to the jury without any guide as to the issues to be determined. The case was submitted to the jury on all the charges of negligence alleged in the petition. An ordinance was introduced in support of four charges. A number of these had no causal connection with the collision. Withdrawal instructions were requested by appellants, which the court refused. In Crossno v. Terminal Railroad Association, 41 S. W. (2d) 796, 328 Mo. 827, l. c. 834, Division One of this court concisely stated the rule applicable to this case as follows:

"Where, however, plaintiff has enumerated several grounds of negligence in his petition and goes to the jury, as in the instant case, without instructions submitting any specific assignment or assignments of negligence, he must be considered as going to the jury on all the assignments of negligence made in his petition, and if the evidence does not sustain all of them it is error to refuse instructions withdrawing from the consideration of the jury those assignments not supported by proof. [Willis v. Applebaum (Mo. App.), 26 S. W. (2d) 823.]"

With the number of charges of negligence against appellants and four specific charges of negligence against the defendant, Saner, and the complicated questions arising by reason thereof, it is preposterous to say that a jury could intelligently arrive at a just verdict without instructions to guide them. This court en banc, in the case of Dorman v. East St. Louis Railway Company, 75 S. W. (2d) 854, 335 Mo. 1082, indicated that in such cases instructions should be given clearly defining the issues. In the Dorman case the defendants submitted and the court gave instructions sufficient to guide the jury. As we understand the opinion, the judgment for plaintiff would have been reversed and remanded except for the reason that defendant's instructions, given by the court, were sufficient. More to the point is the case of Yerger v. Smith, 338 Mo. 140, 89 S. W. (2d) 66, 1. c. 75, etc. (12-13), where the question was discussed at some length, and the court concluded as follows:

"It is our conclusion that the jury was not clearly advised what facts it was necessary to find in order to find against Smith and Clay, and that plaintiff's failure to submit the theory upon which he sought recovery against defendants was error."

That question is not before us, but we are making the suggestion that in cases of this kind a plaintiff ought to submit instructions to the end that a jury may intelligently arrive at a just verdict.

On a retrial respondent should heed the rulings in the cases of Crossno v. Terminal Railroad Association, Phillips v. Henson, Dorman v. East St. Louis Railway Company, and Yerger v. Smith, supra, on the points indicated. Other questions presented need not be discussed as they pertain to the injuries plaintiff sustained and the amount of the verdict.

The judgment is reversed and the cause remanded. *Cooley* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.