MARY VASSIA, RESPONDENT, v. HIGHLAND DAIRY FARMS COMPANY, A CORPORATION, AND H. BARTLETT, DEFENDANTS, HIGHLAND DAIRY FARMS COMPANY, A CORPORATION, APPELLANT.—104 S. W. (2d) 686.

St. Louis Court of Appeals. Opinion filed May 4, 1937.

*C. A. Geers* for respondent.

888

*Jones, Hocker, Gladney & Jones, Web A. Welker* and *Arnot L. Sheppard* for appellant.

McCULLEN, J.—This is a suit for damages for personal injuries alleged to have been sustained by respondent plaintiff as the result of negligence on the part of appellant defendant Highland Dairy Farms Company and one Harlan Bartlett. The cause was tried before the court and a jury and resulted in a verdict and judgment in favor of respondent in the sum of $7500 against both defendants. Highland Dairy Farms Company alone appeals.

The second amended petition of respondent alleged, in substance, that at 3:30 o'clock A. M. on the 16th of August, 1933, respondent was riding as an invited guest in an automobile owned by defendant Bartlett, which was then being driven by Bartlett eastwardly on Lindell Boulevard between Kingshighway Boulevard and Lake Av-

enue, all open public streets in the city of St. Louis, Missouri; that when said automobile was at a point one hundred feet east of Lake Avenue, a horse drawn vehicle (a milk wagon) of the appellant and the automobile of defendant Bartlett, through the concurring negligence of appellant and said Bartlett, collided together causing the automobile in which respondent was riding to collide with a tree and that respondent was thereby thrown with great force and violence against parts of the said automobile and thereby sustained serious and permanent injuries.

The assignments of negligence charged against appellant in respondent's amended petition were: (1) that it negligently caused the milk wagon to come into collision with the automobile in which respondent was riding; (2) that it negligently failed to drive the milk wagon as close as possible to the right hand curb of Lindell Boulevard, in violation of an ordinance of the city of St. Louis; (3) that it negligently failed to turn the milk wagon to the right of the center of Lindell Boulevard so as to pass defendant Bartlett's automobile without interference, in violation of another ordinance of the city of St. Louis; (4) that it negligently drove its milk wagon in the nighttime, to-wit, 3:30 o'clock A. M., without displaying a white light visible from the front thereof and a red light visible from the rear thereof, in violation of another ordinance of the city of St. Louis.

The answer of appellant was a general denial.

The determination of the questions raised by appellant requires a review of the evidence.

Respondent testified that she and her sister, Rose Vassia, met defendant Bartlett between 8:30 and 9:00 P. M. on August 15, 1933, at the Coronado Hotel parking lot in the city of St. Louis; that respondent and her sister left their automobile in the parking lot and joined Bartlett in his automobile and drove to a place named Parkmoor at Big Bend and Clayton Roads in St. Louis County, where they met another sister, Lucille Vassia, and a man named Barnaby who joined them in Bartlett's car. The party of five then went to the Westborough Country Club, arriving there about 10:30 P. M.; that they remained there dancing, eating and watching the floor show until about 1:00 o'clock A. M. of August 16th, when they left in Bartlett's automobile with Bartlett driving and returned to Parkmoor where they ate some sandwiches; that Lucille Vassia and Mr. Barnaby left them at Parkmoor. Respondent, her sister Rose and defendant Bartlett went on in the automobile, which was being driven eastwardly on Lindell Boulevard between Union Boulevard and Kingshighway when the collision with the milk wagon occurred. Bartlett was in the left front seat driving and respondent was in the right front seat. Rose Vassia sat in the rear seat. Bartlett's car was a five passenger Nash coupe.

Respondent and defendant Bartlett testified that at the time of the collision Bartlett's automobile was traveling at a speed of about thirty or thirty-five miles an hour; that immediately before and at the time of the collision Bartlett was driving his automobile about in the center of Lindell Boulevard. Respondent testified that she was looking straight ahead as the automobile approached the point where the collision occurred, but that she did not see appellant's milk wagon until the lights of the automobile shone upon it; that she would not attempt to estimate what the distance was between the automobile and the milk wagon when she first saw the milk wagon. Defendant Bartlett testified that he did not see the milk wagon until his automobile was within two or three feet of it. Respondent's sister, Rose Vassia, testified she did not see the milk wagon at all and was unable to give an opinion as to the rate of speed of the automobile at the time of the collision. She testified that just before the collision she was sitting in the back of the automobile "probably half asleep." Respondent testified that Bartlett did not swerve his automobile at any time prior to the collision but that he swerved it sharply immediately thereafter. Bartlett testified that immediately upon seeing the milk wagon two or three feet in front of him he turned his automobile to the right, away from the wagon which was on his left; that he could not say what part of the milk wagon came in contact with his automobile.

After the collision Bartlett's automobile continued on toward the north side of Lindell Boulevard, went up over the curb and into a tree standing in the parkway. Respondent further testified that when she first saw the milk wagon she saw no lights of any kind on it; that after the automobile collided with the milk wagon the automobile swerved to the side and hit a tree, whereby she was rendered unconscious; that she did not regain consciousness until she was in the hospital, where she remained for two weeks under treatment.

Bartlett was asked on cross-examination concerning his testimony given in a deposition taken sometime before the trial wherein he had testified:

"It seems to me when I got over on that side, I think there was a bug flew in the car; I had a straw hat on that night, and I took my hat and fanned this bug out of the window; the next thing I was in that thing. I couldn't swear where the wagon was, except it happened like that (witness snaps fingers); I was driving along and didn't see anything at all until the first thing I knew I was in it."

Referring to the above deposition testimony, Bartlett stated that he would not say that he did so testify and that he wouldn't say that he did not say that. On further cross-examination he stated that he did not know which way the milk wagon was going; that his lights were burning and would show up an object twenty-five or thirty feet away. He testified:

"Q. Well, you were looking straight ahead of you? A. I had been.

"Q. How did it occur then that you didn't see this wagon until you were within two feet of it? A. Well, I was fanning at a bug that had blown in the car, with my hat. I stopped at the stop sign there at Union. When I started up I didn't notice this bug immediately, but there was a bug blew in the end of it, and I took my hat and was fanning at this bug at the time of the accident.

"Q. You were giving considerable attention to the bug, weren't you, Mr. Bartlett? A. Probably so.

"Q. In fact, more to the bug than you were to the driving, weren't you, or you would have seen this wagon before you got within two feet of it? A. If it had a light on it I would have probably seen it.

"Q. You would have probably seen it. But your attention was focused on the bug, as a matter of fact? A. Not entirely. Not entirely. I was watching where I was going at the same time."

Bartlett further testified on cross-examination that when he first saw the milk wagon about two or three feet away from him he could not see whether it had a horse to it or not; that he didn't see a horse. He further testified on cross-examination as follows:

"Q. You don't know of your own knowledge right now where that wagon was when it was hit, do you? A. Well, I know about where I was until I got right up to the wagon.

"Q. Well, when you got right up to the wagon, within this two feet of it, then where did you go from there? A. Then I hit the wagon—or tried to avoid hitting the wagon, but hit it.

"Q. Which way did you turn to try to avoid it? A. To the right."

On further cross-examination he testified that at the time his car collided with the milk wagon he "imagined" the wagon had to be close to the center of the street, "the same as I was, for me to hit it. When I started to turn I swerved to the right, and when I applied my brakes it threw me to the left. I did that just at the time the crash occurred." The witness stated that at no time after leaving Union Avenue until the collision occurred was he ever farther north on the street than one or two feet south of the center and did not at any time see any driver in the wagon. Bartlett further testified that after his automobile struck the milk wagon he applied his brakes but they would not work because of the rim and wheel being off, and that threw him to the left and that was when he hit the tree; that he could not tell what part of the milk wagon was hit.

Francis Boren, the driver of appellant's milk wagon, testified that he was driving west on Lindell Boulevard between Kingshighway and Union, "just jogging along", and had the lines in his hand when he saw Bartlett's automobile coming east on his, Bartlett's side of the street; that the witness was on his own side of the street;

that "all at once I looked and here he was, right into me, hit me."
He testified that Bartlett
"Just swerved right over from the south hand side of Lindell and
hit me a glancing lick, hit the wagon right in the middle step,
knocked the step back underneath the wagon, broke the cross bar on
the shafts, and the horse gave a jump; I had the reins in my hand
and I held the horse and he jerked the wagon he hit the tree;
the wagon swerved north toward the curb; he went right in behind
the wagon and hit a tree."

The witness further testified that after the accident he saw Bartlett
at the police station and that Bartlett said: "I want as little said
about this case as possible. I'll take care of everything." The wit-
ness further testified that both the white light on the left side in
front of the milk wagon and the red light on the rear thereof were
lighted; that he was not driving along the center of Lindell Boule-
vard at the time but was driving on the north side thereof three or
four feet from the north curb. Boren also sustained injuries but
his injuries are not involved in this case.

Jesse Donnell, who took respondent to the hospital in his automo-
bile immediately after the accident, testified that he arrived at the
scene of the collision shortly after it occurred and that at that time
saw the red light on the rear of the milk wagon, but saw no light
on the front of it.

Charles Wasser, a mechanic in the employ of appellant, testified
he arrived at the scene of the collision about 3:15 A. M.; that when he
got there Boren, the driver of the milk wagon, and police officers were
there. He described the position of the milk wagon as from three to
five feet south of the north curb of Lindell Boulevard and facing
about east and west; that the automobile was up against a tree and
facing northeast; that the left step of the milk wagon was knocked
underneath the wagon and toward the rear; that there was one light
on the front left corner of the wagon, which was burning; that the tail
light or lantern on the back end also was burning; that he had a
conversation with defendant Bartlett at the police station just after
the collision had occurred and asked Bartlett how it occurred; that
Bartlett said that he was coming home from a party; that there
was another couple following them in another machine, or another
machine following them, and that Bartlett, referring to the machine
which was following him, said: "I didn't know whether he was going
to make a left turn at Union and Lindell or not. I turned and looked
around to see whether he was coming. I turned my wheel at the same
time and snapped her right into the wagon before I knew what it
was all about." Wasser testified further that Bartlett stated to
him at the police station: "I realize it is all my fault" and "I don't
want to have anybody hurt on my account or do any suffering;"
that Bartlett further said: "I am willing to stand all damage."

Sergeant Kling of the St. Louis Police Department testified that he and police officer Frank Mayer arrived at the scene of the collision together about ten or fifteen minutes after it occurred; that the automobile was on the north side of the street up against a tree; that the milk wagon was near the north curb of Lindell Boulevard about three or four feet south of the curb; that after they came back from the hospital, the witness asked Mr. Bartlett how it happened; that Bartlett said he was on his way home and that a friend of his was following him in a machine and when they got over east of Union, he (Bartlett) raised up in his seat to look around to see whether his friend was coming and when he got straightened out he was right on top of the milk wagon.

Police officer Mayer gave testimony corroborating Sergeant Kling with respect to the position of the automobile and the milk wagon when they arrived at the scene. He testified that he went to St. Luke's Hospital where respondent and her sister had been taken and there at the hospital had a conversation with Bartlett; that he asked Bartlett how the accident happened and that Bartlett said he turned his head around to see whether a car was following him and he "must have lost control of the car."

Wilbert Le Begue, a driver for appellant on another milk route, testified that as he was driving his milk wagon north on Kingshighway sometime before the collision that morning, he saw Boren, the driver of the milk wagon involved in the collision, as he (Boren) was turning west into Lindell Boulevard from Kingshighway; that he then saw the white light on the front of Boren's wagon and it was burning; that he also then saw the red lantern hanging on the rear of Boren's wagon and it was burning.

Appellant contends that its instruction in the nature of a demurrer to the evidence offered at the close of all the evidence should have been given. We are of the opinion that this contention must be sustained. In her brief respondent says: "There is no question but that defendant Bartlett was guilty of negligence." Respondent contends, however, that Bartlett's negligence was a contributing cause but not the sole cause and that appellant's negligence concurred with Bartlett's negligence and brought about the collision and injury to respondent. Respondent's instruction number 3, which was her main instruction with respect to the alleged negligence of appellant, was based upon the theory that appellant's negligence was the sole proximate cause of her injury. There was nothing in that instruction with respect to appellant's negligence concurring with the negligence of Bartlett. Quite aside, however, from this inconsistency between the theory upon which respondent submitted her case at the trial and her theory now presented to this court, we believe the evidence shows not only that Bartlett was guilty of negligence but goes farther and shows clearly and conclusively that the alleged negligence

of appellant was not the proximate cause of respondent's injury but that Bartlett's negligence was the sole direct and proximate cause thereof.

Respondent called defendant Bartlett as her witness and is, therefore, bound by his testimony. When Bartlett was asked: "How did it occur then that you did not see this wagon until you were within two feet of it?" he answered: "Well, I was fanning at a bug that had blown in the car, with my hat. . . . But there was a bug blew in the end of it, and I took my hat and was fanning at this bug at the time of the accident." Bartlett further described the circumstances of the collision as follows: "I found myself clear over on the north side of Union up between the curb and the sidewalk, against a tree, and that happened in a little longer than a split second. I judge I was traveling 30 or 35 miles an hour." It is true Bartlett testified that his attention was not focused entirely on the bug and that if there was a light on the wagon he would "probably" have seen it, but he further testified that he didn't see the horse attached to the wagon; that he didn't know which way the wagon was going, and that he was only two or three feet from the wagon before he saw it, although he said that his lights were burning and would show up an object he "imagined" twenty-five or thirty feet distant.

In view of such testimony, together with Bartlett's further testimony that it was his automobile which struck the milk wagon, and not the milk wagon which struck the automobile, as well as the further evidence, which is undisputed, that the milk wagon was struck in the middle of the left side in such a manner as to drive the side step up underneath the wagon towards the rear thereof, and that Bartlett's automobile continued on in its course across the street in a northeasterly direction and collided with a tree on the north side thereof, we believe there is but one reasonable conclusion that can be reached. That conclusion is that Bartlett's negligence was the sole direct and proximate cause of respondent's injuries. Mere proof of negligence of appellant would not be sufficient to warrant the court in submitting the case to the jury as to the appellant unless in addition it was shown that there was a causal connection between such negligence and the injuries sustained by respondent. Respondent would be entitled to recover from appellant only by showing that the negligence of appellant's driver had a direct causal connection with respondent's injuries. To impose liability for negligence, causal connection between the negligence and the injuries must appear. [Eaton v. Wallace (Mo.), 287 S. W. 614, 615; Sisk v. Chicago, B. & Q. R. Co. (Mo. App.), 67 S. W. (2d) 830, 834; Iman v. Walter Freund Bread Co., 332 Mo. 461, 468, 56 S. W. (2d) 478, 481.] Even if it be conceded that appellant's milk wagon did not have lights on it and that it did not turn to the right to avoid the collision, it is clear that such negligence did not cause the collision.

There is no testimony on behalf of respondent that the milk wagon, at the time of the collision, was south of the center line of Lindell Boulevard. The only direct testimony as to that was the testimony of the driver of the milk wagon, wherein he said that he was driving on the north side of the street a few feet from the north curb. Bartlett himself testified that after the collision, just as they started to the hospital, he saw the milk wagon and it was then about five feet or so north of the center of Lindell Boulevard. Bartlett admitted that he testified in his deposition: "I couldn't swear where the wagon was except it happened like that (witness snaps his fingers)." Furthermore, at the trial Bartlett's attention was called to his deposition wherein he was asked: "Mr. Bartlett, can you state where, with reference to the center of the street, this milk wagon was?", and wherein he answered: "Well, I just remember this one thing—I wondered why I lost control of that car, and as I look back that is when I imagine that I noticed this milk wagon, and I saw my tire and rim lying on the south side, that is, past the center of Lindell." He said his mind was not exactly clear when his deposition was taken. We think it is too plain for further discussion that the collision would not have occurred except for the negligence of Bartlett in attempting to fan a bug out of his automobile with his hat "at the time of the accident." The evidence shows conclusively that Bartlett negligently failed to look where he was driving immediately before the collision, and when he did look, it was too late for him to do more than swerve his car suddenly in the "split second" about which he testified, and it is not disputed that his automobile did run into the milk wagon even though Bartlett said he first swerved to the right.

It cannot be said that Bartlett's negligent actions were the consequences of any negligent acts of the driver of appellant's milk wagon. Nor could appellant's driver, by the exercise of due care, have anticipated that Bartlett, while driving his automobile at thirty or thirty-five miles an hour at or near the center of the street, would attempt to use his hat to fan a bug out of his automobile and thus fail to see defendant's milk wagon until he was within two feet of it, and that it would further cause Bartlett to lose control of his car and so swerve it as to run the left front wheel thereof into the middle of the side of the milk wagon in such a manner as to tear off the front left wheel and rim of the automobile.

It must be remembered that the evidence which we have referred to above comes from Bartlett, respondent's own witness. In addition to that there is the testimony of the two police officers that Bartlett stated to them, in answer to their questions as to how the collision occurred, that he was turning around and looking behind his automobile to see if another automobile was following him just before the collision occurred. This testimony was not denied by Bartlett.

We do not believe the evidence in this case brings it within the rule laid down by our Supreme Court in State ex rel. Hauck Bakery Co. v. Haid et al., 333 Mo. 76, 62 S. W. (2d) 400, and the cases cited therein, where it was held that one whose negligence combines with that of another to cause injury is liable though his negligence alone would not have produced the injury.

When we consider all the undisputed evidence in the case at bar, including the undisputed physical facts as to the condition and position of the automobile and the milk wagon, we must hold that the negligent acts of Bartlett constituted the sole immediate, direct and proximate cause of respondent's injuries and that the alleged negligence of appellant was not a concurring cause thereof.

We are of the opinion that the trial court should not have submitted the case to the jury as to the appellant herein. In view of the conclusion which we have reached, it is unnecessary to discuss the other points raised by appellant. The judgment as to appellant is reversed.

*Hostetter, P. J.,* and *Becker, J.,* concur.